**STATE of North Dakota, Plaintiff and Appellee,**

**v.**

**Terry KESLER, Defendant and Appellant.**

**Cr. No. 1154.**

Supreme Court of North Dakota.

Nov. 18, 1986.

Michael S. McIntee, State's Attorney, Towner, for plaintiff and appellee; on brief.

Bruce Montgomery, of Teevens, Johnson & Montgomery, Minot, for defendant and appellant; on brief.

VANDE WALLE, Justice.

Terry Kesler appealed from the judgment of conviction of the district court of McHenry County which found him guilty of possession of a controlled substance with intent to deliver. We affirm.

On March 20, 1985, a package which had been mailed from Oregon and which was addressed to Terry Kesler arrived at the Velva post office. The package itself was not suspicious; however, a series of prior events led the postmaster, Mrs. Kerr, to believe the package contained drugs. Mrs. Kerr knew that Terry or his wife had tried to insure a first-class letter to Oregon on at least three occasions. Each time, a postal

employee at the Velva post office explained the difference between sending the letter "registered" or "certified." On one of these occasions, in the fall of 1984, a package arrived from the Oregon address within a few weeks after the Keslers had mailed a letter to that Oregon address. Several employees noticed that the package had an unusual odor, and one commented to Mrs. Kerr that the package smelled like marijuana. Mrs. Kerr then telephoned the Bismarck post office to determine what she should do with the package. She was referred to the post office in St. Paul. The person contacted in St. Paul told Mrs. Kerr to cooperate with the local authorities. Upon receiving that directive, Mrs. Kerr notified the Velva police department. The Velva police then called in a police officer from Minot and a dog which was trained to detect drugs. The dog was brought to the Velva post office and was presented with a number of packages, including the package addressed to Terry Kesler, which had been spread out on the floor. The dog did not positively identify the Kesler package. Testimony indicated the dog's failure to positively identify the Kesler package may have been due to the manner in which the package had been handled. After the lack of a positive response, the package was put back into the flow of mail and was delivered to the Keslers.

During the holiday season of 1984, one of the occasions referred to by Mrs. Kerr, another letter was sent from the Keslers to the same Oregon address. Again, an inquiry was made regarding whether the letter could be insured. On March 20, 1985, the fourth-class package with which this appeal is concerned arrived in the Velva post office. Because of the series of events described, Mrs. Kerr believed that this package contained drugs. Once again Mrs. Kerr telephoned both the Bismarck and St. Paul post offices. Mrs. Kerr spoke with a postal inspector and was again told to cooperate with the local authorities. Mrs. Kerr then contacted the Velva police department and informed them of the package. Arrangements were made for Joe Kintsche, a police officer from Minot, and Lucky, a dog trained to detect drugs, to come to the Velva post office at approximately 7 p.m. on March 21, 1985. Again the dog was presented with several packages, including the Kesler package. This time, however, the result was quite different. Lucky "alerted on" the Kesler package—meaning that the dog reacted in a manner to indicate that the package contained a controlled substance. Lucky was put back on his leash and the packages were rearranged. Lucky was then instructed to "search pot" (the command used to tell Lucky to sniff for the presence of a number of controlled substances, including marijuana), and Lucky again "alerted on" the Kesler package.

On the basis of the information from Mrs. Kerr and the dog's "alerting on" the Kesler package, the police obtained a search warrant. The next day, March 22, Terry Kesler picked up the package and was detained outside the Velva post office, and he and the package were taken into custody. The police searched the package and found drugs or controlled substances which are defined in Chapter 19–03.1, N.D. C.C. Terry was convicted by the district court of possession of a controlled substance with intent to deliver. He raises several issues on appeal.

■ Terry claims that the detention and "sniffing" of his package were illegal.[1] He asserts that the actions of the police and

---

1. Before a criminal defendant is allowed to challenge police action as violative of the Fourth Amendment, he must have standing. In the present appeal the issue of Kesler's standing was not adequately raised by the State. Merely being charged with a possessory crime does not devolve standing upon Terry Kesler, because we no longer follow the automatic-standing rule. *State v. Lind*, 322 N.W.2d 826 (1982); see *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Other jurisdictions have concluded that under similar circumstances standing exists, apparently because the defendant had an expectation of privacy as to the contents of the package. See *State v. Snitkin*, 681 P.2d 980 (Hawaii 1984); *State v. Morgan*, 32 Wash.App. 764, 650 P.2d 228 (1982); *State v. Pohle*, 160 N.J.Super. 576, 390 A.2d 692 (1978), order reversed, 166 N.J.Super. 504, 400 A.2d 109 (1979).

Mrs. Kerr violated the constitutional prohibition against unreasonable searches and seizures and also the postal regulations contained in the Domestic Mail Manual (DMM).[2]

■ The alleged illegal seizure was the detention of the package to allow the dog to sniff it. A seizure involves a meaningful interference with a person's possessory interests in an item of personal property. *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). In *United States v. Place*, 462 U.S. 696, 705, 103 S.Ct. 2637, 2643, 77 L.Ed.2d 110, 119–120 (1983), the Court stated:

> "The intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in its nature and extent. The seizure may be made after the owner has relinquished control of the property to a third party or, as here, from the immediate custody and control of the owner."

The Court in *Place* went on to state that in determining the reasonableness of the seizure, the nature and quality of the police intrusion on the individual's Fourth Amendment interests must be balanced against the importance of the governmental interests which are alleged to justify the intrusion. The Court continued, "When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests can support a seizure based on less than probable cause." 462 U.S. at 703, 103 S.Ct. at 2642, 77 L.Ed.2d at 118.

■ In this case the package had been surrendered by the sender to a third party—the Postal Service. The package never

had been in Terry Kesler's possession and it is clear that he did not know the package had arrived in Velva until an employee at the Velva post office placed a slip in his post office box informing him that the package had arrived. Thus Terry had no knowledge that the package was in Velva and therefore he had a limited possessory interest in the package.

Additionally, the delay in delivery was a minimal intrusion. The primary Fourth Amendment interest in a mailed package is in the privacy of its contents, not the promptness of its delivery. *Garmon v. Foust*, 741 F.2d 1069 (8th Cir.1984), citing *United States v. Hillison*, 733 F.2d 692 (9th Cir.1984); *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970).

■ When the sender of a package delivers it to the Postal Service, he relinquishes possession of and control over the package. The addressee really has no possessory interest and can hardly be heard to object to a brief detention of a package mailed at the fourth-class rate. Neither the sender nor the addressee of a package has more than a minimal interest in the package's being free from delay in delivery. Therefore, the delay which occurred when the police arranged for the dog to sniff the package was such a limited intrusion into Terry Kesler's Fourth Amendment rights that it was justified.

There was a legitimate purpose for detaining the package because Mrs. Kerr had a reasonable suspicion that the package contained drugs. She therefore was justified in delaying delivery until she could check with the postal inspector in St. Paul. The postmaster is not required to permit a

---

**2.** At the trial there was a dispute as to whether or not the DMM had been complied with. The district court held that the DMM provisions had not been violated. Due to our holding in this case that the Fourth Amendment was not violated, we do not reach the issue of the applicability of or compliance with the DMM. However, Sections 115.31 and 115.32 of the DMM permit a postal inspector to detain mail for a brief period of time to assemble evidence sufficient to satisfy the probable-cause requirement for a search

warrant. The postal inspector is required to act diligently and without avoidable delay. Mrs. Kerr contacted the postal inspector in St. Paul and notified him about the package. The postal inspector was made aware that a dog would be used to check for the presence of drugs, and he directed Mrs. Kerr to cooperate with the local authorities. It is clear that Mrs. Kerr was acting at the direction and with the consent of the postal inspector.

package to proceed through the mail if she believes the package contains drugs.

In addition to having a legitimate purpose for delaying delivery of the package, the length of the delay was reasonable in view of the circumstances. The package arrived at the Velva post office on March 20 and was subjected to the sniffing by the Minot police dog at approximately 7 p.m. on March 21, leading to a delay in delivery of approximately 34 hours. There are several reasons for the length of the delay. Mrs. Kerr contacted the postal inspector in St. Paul and was directed to cooperate with the local authorities. Upon notifying the Velva police, Mrs. Kerr was asked if she could hold the package until a drug dog could be brought in. Mrs. Kerr told the officer that she would have to contact the postal inspector to get clearance for the delay. Mrs. Kerr again contacted the postal inspector in St. Paul and was told she could hold the package pending the sniffing by the dog. She was then told that the Velva police would be contacted by the postal inspector regarding the details of the cooperation between the Velva postoffice and the Velva police. These arrangements took time, and in part justify the length of the delay.

Another reason for the length of the delay was the fact that a dog had to be brought in from Minot. The time involved in making arrangements for an officer and his dog to come from Minot was reasonable. The activities by the police as well as Mrs. Kerr were carried out in a manner so that unnecessary attention was not drawn to the package. Thus the delay was lengthened due to Mrs. Kerr's desire to remain inconspicuous. She did not want to draw attention to the fact the police were needed in the post office and therefore wanted the dog to be brought in after business hours. The amount of delay was reasonable and justifiable.

■ Where specific and articulable facts are present which warrant a reasonable belief that a package contains narcotics, the interest in seizing the package briefly to pursue further investigation is substan-

tial. *United States v. Place, supra.* In this case, the seizure was a very minimal intrusion into Kesler's rights. Unlike *Place*, where the authorities seized the defendant's luggage directly from his possession at New York's LaGuardia Airport, Kesler did not have possession of the package and, in fact, did not know it was at the Velva post office when it was detained. As was stated in *Place*, the "public has a compelling interest in detaining those who would traffic in deadly drugs for personal profit." 462 U.S. at 703, 103 S.Ct. at 2642–2643, 77 L.Ed.2d at 118. While the volume of drugs flowing through the mail in Velva may not be great, the interest in detecting drugs is no less in Velva than in New York.

The Supreme Court has also dealt with the detention of mailed packages to obtain sufficient evidence for a search warrant. In *United States v. Van Leeuwen, supra,* the Court held that the 29–hour detention of packages was not a violation of the Fourth Amendment. In *Van Leeuwen*, Justice Douglas, speaking for a unanimous Court, stated:

"[T]he only thing done here on the basis of suspicion was detention of the packages. There was at that point no possible invasion of the right 'to be secure' in the 'persons, houses, papers, and effects' protected by the Fourth Amendment against 'unreasonable searches and seizures.' Theoretically—and it is theory only that respondent has on his side—detention of mail could at some point become an unreasonable seizure of 'papers' or 'effects' within the meaning of the Fourth Amendment." 397 U.S. at 252, 90 S.Ct. at 1032, 25 L.Ed.2d at 285.

In the present case the detention of Kesler's package was much less intrusive than the seizure in *Place*. In *Place*, the Court held that the seizure of the defendant's luggage for 90 minutes violated the Fourth Amendment. The Court reasoned that an intrusion is significant when luggage is seized from the immediate possession of a person because the police conduct intrudes on the suspect's possessory interest in his luggage and also his liberty interest in

proceeding with his itinerary. While he still is technically free to continue his travels or carry out other personal activities pending the release of the luggage, the seizure of the luggage effectively restrains the person because he is subjected to disruptions of his travel plans in order to remain with his luggage or arrange for its return. In essence, the Court held that the detention of the defendant's luggage was equivalent to the detention of a person, and thus was subject to the same limitations as an investigative stop of a person. The Court quoted the following, at footnote 8, from 3 W. LaFave, *Search and Seizure,* § 9.6, p. 72 (Supp.1982):

> "At least when the authorities do not make it absolutely clear how they plan to reunite the suspect and his possessions at some future time and place, seizure of the object is tantamount to seizure of the person. This is because that person must either remain on the scene or else seemingly surrender his effects permanently to the police." *United States v. Place,* 462 U.S. at 708, 103 S.Ct. at 2645, 77 L.Ed.2d at 122.

■ In this case, the seizure of Kesler's package was different in substance and effect from the seizure in *Place.* As we have already stated, any possessory interest Kesler had in the package was minimal. Also, the detention of Kesler's package did not disrupt any travel plans or restrict his actions, unlike the situation in *Place.* The seizure of Kesler's package did not rise to the level of a seizure of Kesler, and thus was not a violation of the Fourth Amendment.

In view of the length of delay, the reasons for the delay, and the interests furthered by the delay, the detention did not reach the point contemplated in *Van Leeuwen* and was not an unreasonable seizure.[3]

Kesler also contends the dog sniff constituted an illegal search. The United States Supreme Court held in *Place* that a canine sniff did not constitute a search within the meaning of the Fourth Amendment. The holding of the Court was based upon the fact that a canine sniff is sui generis—in other words, the only one of its own kind; peculiar. Black's Law Dictionary 1286 (5th ed. 1979).

The Court reasoned:

"A 'canine sniff' by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

"In these respects, the canine sniff is sui generis. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a 'search' within the meaning of the Fourth Amendment." 462 U.S. at 707, 103 S.Ct. at 2644–2645, 77 L.Ed.2d at 121.

---

3. As observed at footnote 6 in *Place,* one commentary has noted that, "*Van Leeuwen* was an easy case for the Court because the defendant was unable to show that the invasion intruded upon either a privacy interest in the contents of the packages or a possessory interest in the packages themselves." 3 W. LaFave, *Search and Seizure,* § 9.6, p. 71 (Supp.1982).

The same reasoning applies to a package mailed through the U.S. Postal Service at the fourth-class rate. Therefore, we hold that the sniffing of Kesler's package was not a Fourth Amendment search.[4] See *United States v. Beale,* 736 F.2d 1289 (9th Cir.1984); *United States v. Klein,* 626 F.2d 22 (7th Cir.1980); *State v. Snitkin,* 681 P.2d 980 (Hawaii 1984).

Kesler also questions the legitimacy of the procedure followed in the issuance of the search warrant. He claims that the police officers were questioned by the judge and the testimony was not recorded as required by Rule 41(c)(1), N.D.R.Crim.P. The bases for the issuance of the warrant were affidavits of two police officers and it is far from clear in the record that the judge questioned the police officers prior to issuing the search warrant. Furthermore, Kesler failed to raise this issue at the trial level. We have stated many times, and repeat today, that issues not raised at the trial court level cannot be raised for the first time on appeal. *Farmers State Bank of Leeds v. Thompson,* 372 N.W.2d 862 (N.D.1985); *Phoenix Assurance Company of Canada v. Runck,* 366 N.W.2d 788 (N.D. 1985).

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and GIERKE, LEVINE and MESCHKE, JJ., concur.

---

**4.** Because we hold that the sniff did not constitute a search and that the delay in delivering the package was not an unreasonable seizure, we need not address the issue of whether or not the exclusionary rule would apply to actions by postal authorities.