PEOPLE v JONES

Docket No. 275438. Submitted February 6, 2008, at Detroit. Decided May 20, 2008, at 9:00 a.m. Leave to appeal sought.

Jeffrey J. Jones was charged in the Wayne Circuit Court with various controlled-substances and firearm offenses following the search with a warrant of two residences he owned. The warrant was based on information obtained from an informant and on the reaction of a police narcotics-detection canine that, when brought to the front door of one of the residences, gave a positive indication that drugs were inside the residence. The court, David J. Allen, J., granted the defendant's motion to suppress the evidence and dismissed the charges, ruling that the canine sniff was obtained in violation of the rights guaranteed by the Fourth Amendment of the United States Constitution because the canine sniff itself is a search that must be supported by probable cause and a warrant. The prosecution appealed.

The Court of Appeals *held*:

1. A search within the meaning of the Fourth Amendment occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.

2. A canine sniff is not a search within the meaning of the Fourth Amendment as long as the sniffing canine is legally present at the vantage point when its sense is aroused, even if it is at the front door of a defendant's home. A canine sniff reveals only the presence of contraband, in which there is no legitimate expectation of privacy.

3. The canine was lawfully present at the front door of the defendant's residence when it detected the presence of contraband. There is no reasonable expectation of privacy at the entrance to property that is open to the public, including the front porch.

4. The defendant had legitimate privacy interests or expectations with respect to the legal activities taking place in the home and the legal contents therein. However, the canine sniff did not invade these legitimate privacy interests or the defendant's legitimate expectation of privacy because of the uniqueness of the

canine sniff that focused only on contraband, for which there was no legitimate privacy interest. The canine sniff was constitutionally sound, not because the defendant had no legitimate privacy interest in the contraband, but because no legitimate privacy interests or expectations were intruded upon by the canine sniff.

Reversed and remanded.

BORRELLO, J., dissenting, stated that the majority disregards the heightened Fourth Amendment protection that the United States Supreme Court has historically recognized exists in a person's home and improperly focuses on the illegality of the contraband obtained as a result of a search, running afoul of the principle that the Fourth Amendment's protection of the home has never been tied to a measurement of the quality or quantity of information obtained. The Fourth Amendment remains decidedly about "place," and when the place at issue is a home, a firm line remains at its entrance blocking the noses of canines from sniffing government's way into the intimate details of an individual's life. The canine sniff of the defendant's home constituted an unreasonable search in violation of the Fourth Amendment. The order of the trial court should be affirmed.

SEARCHES AND SEIZURES — SNIFF BY NARCOTICS-DETECTION CANINE.

A canine sniff by a trained narcotics-detection canine is not a search within the meaning of the Fourth Amendment as long as the sniffing canine is legally present at the vantage point when its sense is aroused, even if it is the front door of a residence that is open to the public; a canine sniff does not reveal the presence of lawful activity or items, but only reveals the presence of contraband, in which there is no legitimate privacy interest (US Const, Am IV; Const 1963, art 1, § 11).

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, *Kym Worthy,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief of Research, Training, and Appeals, for the people.

*Muawad & Muawad, P.C.* (by *Elias Muawad*), for the defendant.

Before: FITZGERALD, P.J., and MURPHY and BORRELLO, JJ.

FITZGERALD, P.J. The prosecution appeals as of right from an order granting defendant's motion to suppress evidence and dismissing the charges against him. We reverse and remand.

I

The police received information from an informant regarding defendant's alleged possession and sale of marijuana. The informant indicated that defendant had been arrested several times in the past for possessing illegal narcotics, that defendant kept a small amount of marijuana for personal use at his 24975 South Sylbert residence in Redford Township, and that defendant kept larger amounts of illegal narcotics at his 15888 Southfield Road residence in Detroit. A Law Enforcement Information Network (LEIN) check revealed that defendant had a misdemeanor conviction for possession of marijuana and two felony convictions for delivery/manufacture of a controlled substance. Prompted by this information, the police arranged to have a trained narcotics-detection dog brought to the defendant's Southfield residence so that a canine sniff could be conducted. The dog gave a positive indication for narcotics at the front door of the residence. On the basis of the dog's reaction, as well as their prior information, the police obtained a search warrant to search both premises.

Defendant was charged in lower-court Docket Number 011698 as a fourth-offense habitual offender, MCL 769.12, with possession of a firearm by a felon (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, as the result of a search of the South Sylbert premises. Defendant was charged in lower-court Docket Number 012320 as a fourth-offense ha-

bitual offender, MCL 769.12, with the manufacture of 5 to 45 kilograms of marijuana, MCL 333.7401(2)(d)(ii), felon-in possession, MCL 750.224f, possession with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401(2)(d)(*iii*), and felony-firearm, MCL 750.227b, as a result of a search of the Southfield Road premises.

Defendant moved to suppress all the items of evidence that had been seized during the two searches. Defendant argued that the canine sniff outside his front door, which alerted the officers to the presence of a controlled substance inside his house, was an illegal search. In support of his argument, defendant relied on *State v Rabb*, 920 So 2d 1175 (Fla App, 2006) (a canine sniff from outside a home to detect narcotics inside the home uses extra-sensory procedure that violates the firm line at the door of the home protected from intrusion by the Fourth Amendment).[1] The prosecution relied on *Illinois v Caballes,* 543 US 405, 408-409; 125 S Ct 834; 160 L Ed 2d 842 (2005), in arguing that the canine sniff was not a search at all because the police were lawfully present at the front door of defendant's residence and defendant possessed no reasonable expectation that his drugs would go undetected. Following a hearing on the motion, the trial court granted defendant's motion to suppress. In support of its decision, the trial court relied on *Kyllo v United States,* 533 US 27, 29; 121 S Ct 2038; 150 L Ed 2d 94 (2001). In *Kyllo,* the Court held that the use of a thermal-imaging device to detect relative amounts of heat within a private home

---

[1] The prosecution noted that *Rabb* is a Florida state court decision not binding on Michigan courts. *Rabb* has not been cited in any subsequent decisions for the holding that a canine sniff at a residence's front door constitutes an illegal search. *Rabb* relied on *United States v Thomas,* 757 F2d 1359 (CA 2, 1985), a decision that has been criticized by other federal circuit courts and appears never to have been followed by any federal courts outside the second circuit.

was a Fourth Amendment search and must be supported by probable cause and a warrant. The *Kyllo* Court held that where the government uses "a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant." *Id.* at 40. In the present case, the trial court found that a canine sniff is akin to the use of a thermal-imaging device. The trial court concluded that the canine sniff is a search that must be supported by probable cause and a warrant.

II

The sole issue on appeal is whether the trial court properly suppressed the evidence against defendant on the ground that the canine sniff, which provided the probable cause for the issuance of the search warrant, was obtained in violation of the rights guaranteed by the Fourth Amendment of the United States Constitution.[2] Resolution of this issue requires a determination whether the canine sniff of the front door of defendant's residence is a search under the Fourth Amendment. We review a trial court's factual findings at a suppression hearing for clear error, but review de novo the ultimate ruling on a motion to suppress. *People v Davis,* 250 Mich App 357, 362; 649 NW2d 94 (2002).

Both the United States Constitution and the Michigan Constitution guarantee the right against unreasonable searches and seizures. US Const, Am IV; Const

---

[2] There is no dispute that a positive reaction by a properly trained narcotics dog can establish probable cause to believe that contraband is present. See, e.g., *United States v Berry,* 90 F3d 148, 153 (CA 6, 1996). The prosecution concedes in this case that probable cause is lacking absent the result of the canine sniff.

1963, art 1, § 11; see *Illinois v McArthur,* 531 US 326; 121 S Ct 946; 148 L Ed 2d 838 (2001). The Michigan Constitution in this regard is generally construed to provide the same protection as the Fourth Amendment of the United States Constitution. *People v Levine,* 461 Mich 172, 178; 600 NW2d 622 (1999). A search within the meaning of the Fourth Amendment "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v Jacobsen,* 466 US 109, 113; 104 S Ct 1652; 80 L Ed 2d 85 (1984).

The United States Supreme Court has held that a "canine sniff" does not unreasonably intrude upon a person's reasonable expectation of privacy. See *United States v Place,* 462 US 696, 706-707; 103 S Ct 2637; 77 L Ed 2d 110 (1983). In *Place,* the Court held that a canine sniff of a traveler's luggage in an airport was not a search within the meaning of the Fourth Amendment because the information obtained through this investigative technique revealed only the presence or absence of narcotics. As the Court explained:

> [T]he canine sniff is *sui generis.* We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. [*Id.* at 707.]

The Supreme Court reaffirmed the *Place* Court's holding in *Jacobsen, supra.* In *Jacobsen, supra* at 123, the Court held that a chemical field test of a white substance found inside a package was not a Fourth Amendment search because the test "merely discloses whether or not a particular substance is cocaine . . . ." Because there is no legitimate interest in possessing cocaine, the field test did not compromise any legitimate privacy interest. *Id.* The Court further explained that "the *reason* [the *Place* canine sniff] did not intrude

upon any legitimate privacy interest was that the governmental conduct could reveal nothing about noncontraband items." *Id.* at 124 n 24 (emphasis in original).

The Supreme Court later held in *Caballes, supra* at 407-408, that a canine sniff of a vehicle during a traffic stop, conducted absent reasonable suspicion of illegal drug activity, did not violate the Fourth Amendment because it did not implicate any legitimate privacy interest. The Court explained that, because there is no legitimate interest in possessing contraband, the use of a well-trained narcotics dog that "*only* reveals the possession of contraband 'compromises no legitimate privacy interest'" and does not violate the Fourth Amendment. *Id.* at 408 (quoting *Jacobsen, supra* at 123). The Court also noted:

> This conclusion is entirely consistent with our recent decision that the use of a thermal-imaging device to detect the growth of marijuana in a home constituted an unlawful search. *Kyllo v. United States*, 533 U.S. 27 [121 S Ct 2038; 150 L Ed 2d 94] (2001). Critical to that decision was the fact that the device was capable of detecting lawful activity—in that case, intimate details in a home, such as "at what hour each night the lady of the house takes her daily sauna and bath." *Id.,* at 38. The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent's hopes or expectations concerning the nondetection of contraband in the trunk of his car. [*Caballes, supra* at 409-410.]

The majority of the federal circuit courts have viewed the *Place* Court's holding as a general categorization of canine sniffs as nonsearches. See, e.g., *United States v Reed,* 141 F3d 644, 648 (CA 6, 1998) (holding that a canine sniff of the inside of an apartment was not a search when the canine team was lawfully present in the building); see also *United States v Roby,* 122 F3d

1120 (CA 8, 1997); *United States v Brock,* 417 F3d 692
(CA 7, 2005); *United States v Vasquez,* 909 F2d 235 (CA
7, 1990).[3] Similarly, the vast majority of state courts
considering canine sniffs have recognized that a canine
sniff is not a Fourth Amendment search.[4] Binding and
persuasive authority convinces us that a canine sniff is
not a search within the meaning of the Fourth Amend-
ment as long as the sniffing canine is legally present at
its vantage point when its sense is aroused. *Reed, supra*

[3] But see *United States v Thomas,* n 1 *supra. Thomas* held that a canine
sniff of an apartment is a search, distinguishing *Place* on the basis of the
heightened expectation of privacy in homes. But Supreme Court prece-
dent makes clear that the status of a canine sniff does not depend on the
object sniffed. For this reason, a number of other courts have criticized
*Thomas* as inconsistent with *Place* and its progeny. See *Reed, supra* at
650 (explaining that *Thomas's* holding "ignores the Supreme Court's
determination in *Place* that a person has no legitimate privacy interest in
the possession of contraband, thus rendering the location of the contra-
band irrelevant to the Court's holding that a canine sniff does not
constitute a search").

[4] See, e.g., *State v Box,* 205 Ariz 492, 496-497; 73 P3d 623 (Ariz App
2003); *Sims v State,* 356 Ark 507; 157 SW3d 530 (2004); *People v Ortega,*
34 P3d 986, 991 (Colo, 2001); *Bain v State,* 839 So 2d 739 (Fla App, 2003);
*Cole v State,* 254 Ga App 424; 562 SE2d 720 (2002); *State v Parkinson,*
135 Idaho 357; 17 P3d 301 (Idaho App, 2000); *People v Cox,* 318 Ill App
3d 161; 739 NE2d 1066 (2000); *Bradshaw v State,* 759 NE2d 271 (Ind
App, 2001); *State v Bergmann,* 633 NW2d 328 (Iowa, 2001); *State v
Barker,* 252 Kan 949; 850 P2d 885 (1993); *State v Kalie,* 699 So 2d 879
(La, 1997); *State v Washington,* 687 So 2d 575 (La App, 1997); *Fitzgerald
v State,* 384 Md 484; 864 A2d 1006 (2004); *Commonwealth v Feyenord,* 62
Mass App 200; 815 NE2d 628 (2004); *Millsap v State,* 767 So 2d 286 (Miss
App, 2000); *State v LaFlamme,* 869 SW2d 183 (Mo App, 1993); *Gama v
State,* 112 Nev 833; 920 P2d 1010 (1996); *State v VanCleave,* 131 NM 82;
33 P3d 633 (2001); *People v Offen,* 78 NY2d 1089; 578 NYS2d 121; 585
NE2d 370 (1991); *State v Fisher,* 141 NC App 448; 539 SE2d 677 (2000);
*State v Kesler,* 396 NW2d 729 (ND, 1986); *State v Rusnak,* 120 Ohio App
3d 24; 696 NE2d 633 (1997); *Scott v State,* 927 P2d 1066 (Okla Crim App,
1996); *State v Smith,* 327 Or 366; 963 P2d 642 (1998); *Commonwealth v
Johnston,* 515 Pa 454; 530 A2d 74 (1987); *State v England,* 19 SW3d 762
(Tenn, 2000); *Rodriguez v State,* 106 SW3d 224 (Tex App, 2003); *State v
Miller,* 256 Wis 2d 80; 647 NW2d 348 (Wis App, 2002); *Morgan v State,* 95
P3d 802 (Wy, 2004).

at 649; see also *Place, supra* at 709 (noting that the sniffed luggage was located in a public place), and *United States v Diaz,* 25 F3d 392, 397 (CA 6, 1994).

The trial court rejected the holding in *Place* on the ground that an individual has a greater privacy interest with regard to his or her residence than one has in a public space. However, the holding in *Place* did not turn on the location of a canine sniff. Central to the holding in *Place* and its progeny is the fact that a canine sniff detects only contraband, in which there is no legitimate expectation of privacy. The heightened expectation of privacy that a person has in his residence is irrelevant under *Place*'s rationale. Whether or not a heightened expectation of privacy exists, the fact remains that a canine sniff reveals only evidence of contraband. *Place, supra* at 707; *Jacobsen, supra* at 122-124. The only relevant locational determination is whether the canine was lawfully at the location where the object was sniffed. The location or circumstance of the sniff is relevant only to determine whether the presence of the canine and the officer at the location was constitutional. See also *Diaz, supra* at 396.

III

Here, the canine was lawfully present at the front door of defendant's residence when it detected the presence of contraband. There is no reasonable expectation of privacy at the entrance to property that is open to the public, including the front porch. See *People v Custer (On Remand),* 248 Mich App 552, 556, 561; 640 NW2d 576 (2001) (under Michigan law, the police can lawfully stand on a person's front porch and look through the windows into the person's home, as long as there is no evidence that the person expected the porch to remain private, such as by erecting a fence or gate).

The record contains no evidence that the canine team crossed any obstructions, such as a gate or fence, in order to reach the front door, or that the property contained any signs forbidding people from entering the property. Any contraband sniffed by the canine while on defendant's front porch—an area open to public access —fell within the "canine sniff" rule. Consequently, there was no search in violation of the Fourth Amendment.

IV

We find it necessary to address some of the issues and points raised in our colleague's dissenting opinion. First, we wholeheartedly agree with the dissent that the United States Supreme Court has historically recognized the significant privacy interest that an individual has in his or her home and has guardedly protected that interest against governmental invasions and intrusions, i.e., searches, that offend the Fourth Amendment. See *Payton v New York*, 445 US 573, 590; 100 S Ct 1371; 63 L Ed 2d 639 (1980) ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."). However, the dissent fails to grasp that a canine sniff is simply not a search or an intrusion on an expectation of privacy that implicates the Fourth Amendment under *Caballes*, *Place,* and their progeny, where the police and the canine are lawfully present at the location at issue, even if it is at the front door of a defendant's home.

Contrary to the assertions made by the dissent, *Place* and *Caballes* contain no language suggesting that the analysis would differ under the circumstances · presented here in which the canine sniff occurred outside the home from a lawful vantage point. The high court's

fleeting reference to a "public place" in *Place* simply
indicated, at most, that the luggage containing contraband was in an area in which the police and the canine
were lawfully present. *Place, supra* at 707. The *Place*
Court recognized that a person "possesses a privacy
interest in the contents of personal luggage that is
protected by the Fourth Amendment." *Id.* However, the
canine sniff was unique and disclosed "only the presence or absence of narcotics, a contraband item." *Id.*
Therefore, there was no search within the meaning of
the Fourth Amendment. *Id.* Here, defendant likewise
possessed a general privacy expectation with respect to
his home that was absolutely protected by the Fourth
Amendment, but the canine sniff from outside the home
and from a lawful vantage point could only disclose the
presence of narcotics and not lawful activity and thus
did not constitute a search of the home under the
Fourth Amendment because no legitimate privacy interest was implicated. Any intrusion on defendant's
expectation of privacy was insufficient to find a Fourth
Amendment infringement, given that the canine sniff
could only intrude to the extent that illegal drugs or
activities, for which there is no legitimate privacy
interest, were detectable. A person has a legitimate
expectation of privacy regarding his or her home, but
there is no legitimate privacy interest in contraband
that may be inside the home; however, this does not
mean that the state has free reign to invade the
person's general expectation of privacy without a warrant in order to obtain contraband on the basis that
there is no legitimate privacy interest in the contraband. This is because, typically, such an invasion or
search would compromise both illegitimate *and* legitimate interests or expectations and that is the danger
against which the Fourth Amendment protects.

The dissent's discussion of *Caballes* and contention that it supports the proposition that a canine sniff at a home would be treated differently is even more misplaced than its attempt to distinguish *Place*. The dissent states, "Similarly, in *Caballes*, which relied on the reasoning of *Place*, the Court recognized that the expectation of privacy that an individual has regarding 'intimate details in a home' is 'categorically distinguishable from [a person's] hopes or expectations concerning the nondetection of contraband in the trunk of his car.' " *Post* at 105, quoting *Caballes, supra* at 409-410. The two quoted excerpts taken from *Caballes* in this passage are cited out of context, coming from two different sentences and then grafted together. As indicated earlier in this opinion, the *Caballes* Court actually stated:

> Accordingly, the use of a well-trained narcotics-detection dog—one that "does not expose noncontraband items that otherwise would remain hidden from public view,"—during a lawful traffic stop, generally does not implicate legitimate privacy interests. In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement.

> This conclusion is entirely consistent with our recent decision [in *Kyllo*] that the use of a thermal-imaging device to detect the growth of marijuana in a home constituted an unlawful search. Critical to that decision was the fact that the device was capable of detecting lawful activity—in that case, intimate details in a home, such as "at what hour each night the lady of the house takes her daily sauna and bath." The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent's hopes or expectations concerning the nondetection of contraband in the trunk of his car. A dog sniff conducted during a concededly lawful

traffic stop that reveals no information other than the
location of a substance that no individual has any right to
possess does not violate the Fourth Amendment. [*Id.*
(citations omitted).]

Thus, the Court did not state or suggest that police
activity at a home is categorically distinguishable from
police activity involving the trunk of a car for purposes
of analyzing the constitutionality of a canine sniff.
Rather, the categorical distinction of which the Court
spoke related to the difference between police activity
that reveals lawful as well as unlawful conduct, thereby
invading a zone of privacy and implicating Fourth
Amendment protections, and a canine sniff that reveals
only the presence of contraband (unlawful conduct) and
does not intrude on legitimate privacy interests. Indeed,
the Court distinguished *Kyllo* not because a home was
involved there, but because lawful as well as unlawful
activity could be detected in *Kyllo.* If the dissent were
correct in its analysis, the Court in *Caballes* could have
simply disregarded or distinguished *Kyllo* on the basis
that the *Kyllo* search was of a home.

The dissent states, "If, as the majority suggests, a
person never has an expectation of privacy in contra-
band, irrespective of the location of the contraband,
then it would follow that a search of contraband would
never be unreasonable and such evidence would there-
fore never be suppressed." *Post* at 113. The dissent
misconstrues our holding. As reflected in the preceding
few paragraphs, the principle that a person does not
have a legitimate privacy interest in contraband does
not equate to a conclusion that the seizure of the
contraband does not violate the Fourth Amendment
protection against an unreasonable search. Defendant
certainly had legitimate privacy expectations or inter-
ests with respect to his home because we can safely
assume that legal activities were also taking place in the

home and that some of the home's contents were legal to possess. But the canine sniff did not invade these legitimate privacy interests or defendant's legitimate expectation of privacy because of the uniqueness of the canine sniff that focused only on contraband, for which there was no legitimate privacy interest. Had the police entered the front door of defendant's home without a warrant and located the narcotics, absent exigent circumstances, the entry would have been an unlawful intrusion on defendant's legitimate expectation of privacy, violating the Fourth Amendment, because, despite the presence of the illegal narcotics, the police could also observe and handle contents of the home that were lawfully possessed. Under such circumstances, it would be incorrect to conclude that the search was legal merely because defendant had no expectation of privacy in the contraband, nor does our opinion suggest that such a search would be lawful. The canine sniff here was constitutionally sound, not because defendant had no legitimate privacy interest in the contraband, which will always be the case in Fourth Amendment disputes over seized incriminating evidence, but because no legitimate privacy interests or expectations were intruded upon by the canine sniff. As indicated in *Place*, it is the uniqueness and attributes of a canine sniff that dictate a finding that the Fourth Amendment was not violated in the case at bar.

Reversed and remanded to the trial court for further proceedings. Jurisdiction is not retained.

MURPHY, J., concurred.

BORRELLO, J. (*dissenting*). In this case, the majority has held that a person has no legitimate privacy interest in the possession of contraband and, therefore, a canine sniff of the porch of the home in which the contraband

is located does not constitute a search. In my view, the majority opinion erodes the protections afforded by the Fourth Amendment to protect the privacy and sanctity of individuals' homes and runs afoul of the principle articulated by the United States Supreme Court that "[t]he Fourth Amendment's protection of the home has never been tied to measurement of the quality or quantity of information obtained." *Kyllo v United States*, 533 US 27, 37; 121 S Ct 2038; 150 L Ed 2d 94 (2001). Because the majority opinion disregards the heightened Fourth Amendment protection that the Supreme Court has historically recognized exists in a person's home, instead focusing on the illegality of the contraband obtained as a result of the search, I respectfully dissent. I would hold that the canine sniff in this case constituted an unreasonable search of defendant's home in violation of the Fourth Amendment of the United States Constitution, US Const, Am IV, and the prohibition against unreasonable searches and seizures in the Michigan Constitution, Const 1963, art 1, § 11, and that any evidence obtained as a result of this illegal search must be suppressed as fruit of the poisonous tree. *Wong Sun v United States*, 371 US 471, 484-488; 83 S Ct 407; 9 L Ed 2d 441 (1963). Accordingly, I would affirm the trial court's order dismissing the charges against defendant for the reasons set forth in this dissent.

## I. EXPECTATION OF PRIVACY IN THE HOME

The majority concludes that the canine sniff of defendant's porch did not constitute a Fourth Amendment search because defendant has no legitimate interest in possessing contraband. According to the majority, "[t]he heightened expectation of privacy that a person has in his residence is irrelevant . . . ." *Ante* at 94. I

disagree with the majority's analysis in this regard. In
my view, the majority's conclusion that the canine sniff
of defendant's porch did not constitute a Fourth
Amendment search disregards the significant privacy
interest that the Supreme Court has historically recog-
nized that an individual has in his or her home. At the
very core of the Fourth Amendment is the right of an
individual to retreat into his or her own home and be
free from governmental intrusion. *Silverman v United
States,* 365 US 505, 511; 81 S Ct 679; 5 L Ed 2d 734
(1961). Thus, "the Fourth Amendment has drawn a
firm line at the entrance to the house. Absent exigent
circumstances, that threshold may not reasonably be
crossed without a warrant." *Payton v New York,* 445 US
573, 590; 100 S Ct 1371; 63 L Ed 2d 639 (1980). See also
*United States v United States Dist Court for the Eastern
Dist of Michigan,* 407 US 297, 313; 92 S Ct 2125; 32 L
Ed 2d 752 (1972) ("[P]hysical entry of the home is the
chief evil against which the wording of the Fourth
Amendment is directed . . . .").

I cannot agree with the majority's failure to recog-
nize the significance of the fact that the canine sniff at
issue in this case was effectuated at defendant's home.
The majority opinion ignores "the shroud of protection
wrapped around a house by the Fourth Amendment[.]"
*State v Rabb,* 920 So 2d 1175, 1182 (Fla App, 2006). In
my view, this case turns on the fact that the search was
undertaken not in a public setting where defendant
would have had a diminished expectation of privacy, but
at defendant's home, where defendant reasonably had
the highest expectation of privacy. A person's home is
not some abstract place or location for which it is
unclear whether the person has a reasonable expecta-
tion of privacy. Indeed, "in the case of the search of the
interior of homes . . . there is a ready criterion, with
roots deep in the common law, of the minimal expecta-

tion of privacy that *exists*, and that is acknowledged to be *reasonable*." *Kyllo, supra* at 34 (emphasis in original).

The Supreme Court cases cited above plainly reveal the fact that the Fourth Amendment affords individuals a heightened expectation of privacy in their homes. While it is true that, in general, the Fourth Amendment protects people, not places,[1] it is clear that when the place involved is an individual's home and the person has not knowingly exposed the contents of the home to the public, *Katz v United States*, 389 US 347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1967), the Fourth Amendment does provide heightened protection for that particular place. Justice Harlan's concurrence in *Katz* underscores the fact that, contrary to the view of the majority in this case, the place or location of a search is significant, particularly if that place or location is an individual's home:

> As the Court's opinion states, "the Fourth Amendment protects people, not places." The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a "place." My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable." Thus a man's home is, for most purposes, a place where he expects privacy.... [*Id.* at 361 (Harlan, J., concurring).]

---

[1] I would observe, however, that the United States Supreme Court has, in numerous Fourth Amendment cases, characterized places as "constitutionally protected areas." See, e.g., *Kyllo, supra* at 31, 34; *Berger v New York*, 388 US 41, 57, 59; 87 S Ct 1873; 18 L Ed 2d 1040 (1967); *Hoffa v United States*, 385 US 293, 301; 87 S Ct 408; 17 L Ed 2d 374 (1966); *Lopez v United States*, 373 US 427, 438-439; 83 S Ct 1381; 10 L Ed 2d 462 (1963); *Silverman, supra* at 510, 512.

By focusing on the illegality of the contraband obtained by the search, the majority disregards the significant privacy interest that defendant had in his home. Under the majority's view, the crux of the issue is not where the search took place, but rather the legality of the item that was being sought. The majority's failure to engage in a meaningful discussion regarding the privacy interests that an individual has in his or her home is disturbing; any discussion of what constitutes a search that does not begin its analysis by taking into consideration the level of the expectation of privacy in the place searched is, in my view, fundamentally flawed. The majority essentially asserts that because the item sought was illegal contraband, there is no Fourth Amendment protection and no suppression remedy for illegally obtained evidence. Under this reasoning, the government could justify any search of an individual's home, no matter how unreasonable, as long as the government is searching for contraband. I find such a conclusion abhorrent to the principles and legal traditions set forth by and from the Fourth Amendment.

## II. CANINE SNIFF

The importance of the fact that the canine sniff occurred at defendant's home, and not in a public place, is highlighted by two decisions of the United States Supreme Court that have addressed the constitutionality of the government's use of a canine sniff in public places. In *United States v Place*, 462 US 696; 103 S Ct 2637; 77 L Ed 2d 110 (1983), the Supreme Court held that a canine sniff of a passenger's luggage at an airport did not constitute a search within the meaning of the Fourth Amendment. Although part of the rationale for the Court's conclusion that the canine sniff did not constitute a search was the fact that the canine "sniff disclose[d] only the presence or absence of narcotics, a

contraband item," *id.* at 707, the fact that the sniff occurred in a public place was also an important part of the Court's rationale:

> A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. . . . Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.
>
> In these respects, the canine sniff is *sui generis*. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, *which was located in a public place,* to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment. [*Id.* (emphasis added).]

The United States Supreme Court revisited the issue of canine searches in public places in *Illinois v Caballes*, 543 US 405; 125 S Ct 834; 160 L Ed 2d 842 (2005). In *Caballes*, the police stopped the defendant's vehicle for speeding. While one officer was writing the defendant a warning ticket, another officer walked his dog around the car, and the dog indicated that it detected drugs in the trunk. On the basis of the dog's response, the officers searched the trunk, found marijuana, and arrested the defendant. In holding that the arrest and search were lawful, the Court stated:

> [T]he use of a well-trained narcotics-detection dog—one
> that "does not expose noncontraband items that otherwise
> would remain hidden from public view," *Place*, 462 U.S., at
> 707—during a lawful traffic stop, generally does not impli-
> cate legitimate privacy interests. In this case, the dog sniff
> was performed on the exterior of respondent's car while he
> was lawfully seized for a traffic violation. Any intrusion on
> respondent's privacy expectations does not rise to the level
> of a constitutionally cognizable infringement. [*Caballes*,
> *supra* at 409.]

In *Place*, the fact that the canine sniff of the defen-
dant's luggage occurred "in a public place" was part of
the Court's rationale in concluding that the canine sniff
did not constitute a search within the meaning of the
Fourth Amendment. *Place*, *supra* at 707. Similarly, in
*Caballes*, which relied on the reasoning of *Place*, the
Court recognized that the expectation of privacy that an
individual has regarding "intimate details in a home" is
"categorically distinguishable from [a person's] hopes
or expectations concerning the nondetection of contra-
band in the trunk of his car." *Caballes*, *supra* at
409-410. In light of the Court's explicit recognition in
*Place* that the defendant's luggage was located "in a
public place[,]" *Place*, *supra* at 707, I cannot concur
with the majority's contention that "[t]he heightened
expectation of privacy that a person has in his residence
is irrelevant under *Place*'s rationale." *Ante* at 94. The
plain language of the Court's opinion in *Place* reveals
that part of the rationale for the Court's holding was
that the canine sniff of the luggage occurred in a public
place. In *Place*, the canine sniff occurred in the terminal
of an airport, and in *Caballes*, the canine sniff was
performed on an automobile that was stopped on an
interstate highway. If anything, the majority's claim
that "the holding in *Place* did not turn on the location
of a canine sniff," *ante* at 94, underscores the inappli-
cability of the holdings of *Place* and *Caballes* to the facts

of this case because although those cases involved canine sniffs, the canine sniffs occurred in public places, not, like in this case, in an individual's home.

### III. *STATE v RABB*, 920 So 2d 1175 (Fla App, 2006)

I am persuaded by the reasoning and holding of the Florida Court of Appeals in *Rabb*,[2] a case that is factually on point with the instant case because it did involve a canine sniff of an individual's home.[3] The issue in *Rabb* was identical to the issue in this case: "whether a dog sniff at the exterior of a house is a search under the Fourth Amendment." *Rabb, supra* at 1182. The court in *Rabb* began its analysis with a discussion about the "constitutional protections afforded a house throughout the long history of the Fourth Amendment," noting the existence of a "shroud of protection wrapped around a house by the Fourth Amendment[.]" *Id.* In ruling that the canine sniff constituted an unreasonable search of the defendant's house, *Rabb* concluded that *Kyllo, supra*, controlled the outcome of the case. In *Kyllo*, the police used a thermal

---

[2] This was the *Rabb* court's second opinion in the matter. Its first opinion, *State v Rabb*, 881 So 2d 587 (Fla App, 2004), was vacated by the United States Supreme Court and remanded for further consideration in light of *Caballes, supra. Florida v Rabb*, 544 US 1028 (2005).

[3] The majority conclusorily rejects *Rabb* with the statement: "*Rabb* has not been cited in any subsequent decisions for the holding that a canine sniff at a residence's front door constitutes an illegal search." *Ante* at 89 n 1. For reasons explained in the body of my dissent, I, like the trial court in this case, am persuaded by the reasoning and holding of the *Rabb* opinion. Furthermore, I would note that, while the United States Supreme Court's denial of certiorari does not express the Supreme Court's view of the merits of the lower court's judgment, *Hathorn v Lovorn*, 457 US 255, 262 n 11; 102 S Ct 2421; 72 L Ed 2d 824 (1982), the United States Supreme Court did deny certiorari following the *Rabb* court's decision on remand. *Florida v Rabb*, ___ US ___; 127 S Ct 665; 166 L Ed 2d 513 (2006).

imager to scan the petitioner's house. *Kyllo, supra* at 29. The scan revealed the presence of heat in certain locations in the house, from which the police concluded that the petitioner was using halide lamps to grow marijuana. *Id.* at 30. The United States Supreme Court stated that "[t]he Fourth Amendment's protection of the home has never been tied to measurement of the quality or quantity of information obtained" and ruled that the use of the sense-enhancing thermal imager amounted to an unreasonable search of the petitioner's house. *Id.* at 37, 40.

In relying on *Kyllo*, the *Rabb* court noted the importance of the fact that the canine sniff was a search of the defendant's home:

> This logic is no different than that expressed in *Kyllo*, one of the recent pronouncements by the United States Supreme Court on law enforcement searches of houses. The use of the dog, like the use of a thermal imager, allowed law enforcement to use sense-enhancing technology to intrude into the constitutionally-protected area of Rabb's house, which is reasonably considered a search violative of Rabb's expectation of privacy in his retreat. Likewise, it is of no importance that a dog sniff provides limited information regarding only the presence or absence of contraband, because as in *Kyllo*, the quality or quantity of information obtained through the search is not the feared injury. Rather, it is the fact that law enforcement endeavored to obtain the information from inside the house at all, or in this case, the fact that a dog's sense of smell crossed the "firm line" of Fourth Amendment protection at the door of Rabb's house. Because the smell of marijuana had its source in Rabb's house, it was an "intimate detail" of that house, no less so than the ambient temperature inside Kyllo's house. Until the United States Supreme Court indicates otherwise, therefore, we are bound to conclude that the use of a dog sniff to detect contraband inside a house does not pass constitutional muster. The dog sniff at the house in this case constitutes an illegal search. [*Rabb, supra* at 1184.]

In concluding that the canine sniff of the defendant's house constituted an unreasonable search, the *Rabb* court distinguished the United States Supreme Court's rulings in *Place* and *Caballes* on the basis that although *Place* and *Caballes* involved canine sniffs, the canine sniffs in those cases occurred in public places, whereas in *Rabb* the canine sniff occurred at the defendant's house:

> In the present case, there are significant place and situation differences from *Caballes*. The challenged dog sniff occurred at the exterior of Rabb's house, the most sacred of places under Fourth Amendment jurisprudence. To repeat, the Fourth Amendment draws "a firm line at the entrance to the house." *Payton*, 445 U.S. at 589. *Caballes*, on the other hand, does not involve a house, but rather a vehicle lawfully stopped by law enforcement while traveling along a public interstate highway. 125 S.Ct. at 836. Throughout the history of the Fourth Amendment, vehicles on public roads have not been granted the deference afforded to houses for several reasons: the ready mobility of vehicles, the fact that the interiors of vehicles are generally in plain view of those passing by, and the reality of "pervasive regulation" of vehicles by government, all of which result in a decreased expectation of privacy. . . . The case on which *Caballes* principally relies, *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L. Ed. 2d 110 (1983), also does not involve a house. Rather, it involves luggage in an airport, another public place. *Place*, 462 U.S. at 699, 103 S.Ct. 2637. Without doubt any protection of luggage in such a public location has been eroded to nearly the point of non-existence in a post-9/11 world. The individual's expectation of privacy could not be more minimal in today's airports with their luggage screenings, passenger scans, and patdown searches.
>
> Juxtaposed against the realities of travel by car and plane, the house stands strong and alone, shrouded in a cloak of Fourth Amendment protection. A house is not movable or on display to the public (at least as far as its interior). The interior of the house is not pervasively

regulated by government. If the Fourth Amendment has any meaning at all, a dog sniff at the exterior of a house should not be permitted to uncloak this remaining bastion of privacy, this most sacred of places under Fourth Amendment jurisprudence. [*Id.* at 1189.]

Ultimately, the *Rabb* court, observing that the Supreme Court has not yet addressed "the intersection between the staunchly-protected house, as discussed in *Kyllo*, and law enforcement's use of dog sniffs by trained canines to detect contraband[,]" *id.* at 1183, ruled that a canine sniff of a home constitutes an unreasonable search because "the Fourth Amendment remains decidedly about 'place,' and when the place at issue is a home, a firm line remains at its entrance blocking the noses of dogs from sniffing government's way into the intimate details of an individual's life." *Id.* at 1192.

Like the *Rabb* court, I would conclude that this case is controlled by *Kyllo* because, similar to the facts of this case, *Kyllo* involved the government's use of sensory-enhancing technology to effect a search of a home.[4] The

---

[4] Two other cases decided by the United States Supreme Court, in which the government used beepers to monitor the defendants' activities, further underscore the fact that whether the use of sensory-enhancing methods constitutes an unreasonable search is dependent on whether the monitoring is of a public place or a private home. In *United States v Knotts*, 460 US 276, 280-285; 103 S Ct 1081; 75 L Ed 2d 55 (1983), the Supreme Court held that the monitoring without a warrant of a beeper (located in a container of chloroform) in an *automobile* did not invade any legitimate expectation of privacy and that there was neither a search nor a seizure within the contemplation of the Fourth Amendment because the governmental surveillance conducted through the beeper was nothing more than following an automobile on public streets. Justice Rehnquist, writing for the majority, recognized that there is a "diminished expectation of privacy in an automobile" and opined that "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Knotts, supra* at 281. However, in *United States v Karo*, 468 US 705, 714;

use of a thermal-imaging device in *Kyllo* and the use of
a canine sniff in this case are both forms of sensory-

104 S Ct 3296; 82 L Ed 2d 530 (1984), the Supreme Court held that the
monitoring without a warrant of a beeper (located in a can of ether) in a
*home* violated the Fourth Amendment. In *Karo*, Justice White, writing
for the majority, opined:

> At the risk of belaboring the obvious, private residences are
> places in which the individual normally expects privacy free of
> governmental intrusion not authorized by a warrant, and that
> expectation is plainly one that society is prepared to recognize as
> justifiable. Our cases have not deviated from this basic Fourth
> Amendment principle. Searches and seizures inside a home with-
> out a warrant are presumptively unreasonable absent exigent
> circumstances. . . .

> The monitoring of an electronic device such as a beeper is, of
> course, less intrusive than a full-scale search, but it does reveal a
> critical fact about the interior of the premises that the Govern-
> ment is extremely interested in knowing and that it could not have
> otherwise obtained without a warrant. . . .

> We cannot accept the Government's contention that it should be
> completely free from the constraints of the Fourth Amendment to
> determine by means of an electronic device, without a warrant and
> without probable cause or reasonable suspicion, whether a particular
> article—or a person, for that matter—is in an individual's home at a
> particular time. Indiscriminate monitoring of property that has been
> withdrawn from public view would present far too serious a threat to
> privacy interests in the home to escape entirely some sort of Fourth
> Amendment oversight. [*Id.* at 714-716.]

While *Knotts* and *Karo* are admittedly factually distinguishable from the
instant case because they involve the government monitoring individuals'
activities with beepers, in my view, the Supreme Court's holdings in *Knotts*
and *Karo* underscore the fact that when sensory-enhancing methods are
used to effectuate a search or monitor the activities of an individual or
individuals, the location of the search or monitoring, and specifically
whether it occurs in the privacy of an individual's home, is critical to the
determination whether there has been a Fourth Amendment violation.
Thus, just as with a canine sniff, a beeper used to monitor activities that
occur in a public place does not constitute a Fourth Amendment violation,
*Knotts, supra*; however, once the same technology is employed to monitor
what goes on inside a private dwelling, the Fourth Amendment precludes
their use without first obtaining a search warrant. *Karo, supra.*

enhancing technology, and in both this case and *Kyllo*,
the government's use of sensory-enhancing technology
was used to effect a search of an individual's home. I
firmly agree with the *Rabb* court's conclusion that "[a]t
the end of the analysis, the Fourth Amendment remains
decidedly about 'place,' and when the place at issue is a
home, a firm line remains at its entrance blocking the
noses of dogs from sniffing government's way into the
intimate details of an individual's life." *Id.*

### IV. RESPONSE TO THE MAJORITY

The majority relies on *United States v Jacobsen*, 466
US 109; 104 S Ct 1652; 80 L Ed 2d 85 (1984), for the
proposition that a person has no legitimate privacy
interest in possessing contraband. This assertion un-
derscores the fundamental distinction between my view
of this issue and the majority's view. In my view, the
proper inquiry is whether an individual had a reason-
able expectation of privacy in the place or location
searched, particularly if the place or location is an
individual's home. In the majority's view, the inquiry is
whether the individual had a reasonable expectation of
privacy in the item searched. Like the court in *Rabb*, I
fear the erosion of the Fourth Amendment that will
result from any approach that focuses, not on the
expectation of privacy that an individual has in the
place searched, but on the expectation of privacy that
an individual has in the item searched:

> [A] slippery slope portends peril for privacy if the item
> searched for is the measuring stick. If determining whether
> law enforcement conduct constitutes a search is solely a
> function of whether the item searched for is illegal,
> whether that item be in a vehicle on a public highway or
> beyond the closed doors of an individual's castle, the
> Fourth Amendment is rendered meaningless. Nothing
> would deter law enforcement from marching a dog up to

the doors of every house on a street hoping the dog sniffs drugs inside. If drugs are detected, then no search has occurred because there is no legitimate expectation of privacy in drugs and the Fourth Amendment is not implicated; if drugs are not detected, then law enforcement cannot charge the individual with a crime and the unfounded search goes undeterred. Such an "ends justifies the means" approach to the Fourth Amendment is simply not what the Founders intended when they embodied a barrier at the door of the home in the Fourth Amendment. [*Rabb, supra* at 1190-1191.]

Relying on *Place*, the majority opinion asserts that the "United States Supreme Court has held that a 'canine sniff' does not unreasonably intrude upon a person's reasonable expectation of privacy." *Ante* at 91. The majority opinion also relies on *Place* for the proposition that an individual has no expectation of privacy in contraband. According to the majority, "[t]he heightened expectation of privacy that a person has in his residence is irrelevant under *Place*'s rationale." *Ante* at 94. However, as I explained above, I would conclude that *Place* is distinguishable from the instant case because the canine sniff in that case occurred in a public place and not in an individual's home. Furthermore, the notion that a person has no legitimate interest in possessing illegal contraband and that a search revealing contraband can never be unreasonable and never result in the suppression of the contraband is negated by the Supreme Court's holding in *Kyllo*. In *Kyllo*, the Supreme Court held that the use of a thermal-imaging device to detect the growing of marijuana in a home constituted an unlawful search. *Kyllo, supra* at 40. Even though the evidence obtained by the search was contraband, the Supreme Court essentially held that the contraband obtained as a result of the illegal search must be suppressed, ruling that it could not be used to establish probable cause for the search warrant. *Id.* The

Supreme Court's decision rested on "the Fourth Amendment sanctity of the home" and the fact that the thermal-imaging device was capable of detecting lawful intimate details in a home, such as "at what hour each night the lady of the house takes her daily sauna and bath . . . ." *Id.* at 37-38. If, as the majority suggests, a person never has an expectation of privacy in contraband, irrespective of the location of the contraband, then it would follow that a search of contraband would never be unreasonable and such evidence would therefore never be suppressed. As evidenced by the Supreme Court's decision in *Kyllo*, this is clearly not the case. In light of *Kyllo*, I would reject any contention that because a person does not have any expectation of privacy in contraband, there is no suppression remedy when an illegal search of a home uncovers contraband.

Citing *Caballes*, the majority asserts that because the use of the canine sniff *only* reveals the possession of narcotics (marijuana), the canine sniff does not compromise any legitimate privacy interest. I am highly suspicious of any claim that canine sniffs are always reliable and only reveal the presence of marijuana. Moreover, I would observe that in *Caballes*, the Supreme Court, in rendering its decision in that case, somewhat defensively noted that its holding was consistent with *Kyllo*. In so noting, the Supreme Court itself noted the distinction between cases involving searches of an individual's home and cases involving a search of an automobile, stating:

> Critical to [the decision in *Kyllo*] was the fact that the device was capable of detecting lawful activity—in that case, intimate details in a home . . . . The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent's hopes or expectations concerning the nondetection of contraband in the trunk of his car. [*Caballes, supra* at 409-410.]

Because defendant's contraband was located in his home and was not in plain view, the existence of the contraband was an intimate detail of his home that the government was not entitled to see without a warrant. As the Supreme Court noted in *Kyllo*: "[i]n the home . . . *all* details are intimate details, because the entire area is held safe from prying government eyes." *Kyllo*, *supra* at 37 (emphasis in original).

The majority is willing to conclude, primarily on the bases of *Place* and *Caballes*, United States Supreme Court cases involving canine sniffs of contraband in public areas, that a canine sniff of a home similarly does not constitute a search within the meaning of the Fourth Amendment. This, despite the fact that the Supreme Court has never addressed the issue whether a canine sniff of an individual's home amounts to a Fourth Amendment search. See *Rabb*, *supra* at 1192. The fact that this case involves the government's use of sensory-enhancing methods to effectuate a search of defendant's home requires a different analysis because of the historical Fourth Amendment protection that has been afforded to homes. I share the *Rabb* court's fear of the erosion of the Fourth Amendment by the use of sensory-enhancing methods to effectuate searches of individual's homes:

> The Fourth Amendment concern is that the government endeavored at all to employ sensory-enhancing methods to cross the firm line at the entrance of a house. Once that line is violated by a dog's nose or a thermal imager, it brings an onslaught of prying government eyes in its wake, and the formerly intimate details of that house become open to public display. [*Id.* at 1190 (citation omitted).]

### V. CONCLUSION

In sum, I would conclude that the canine sniff of defendant's home constituted an unreasonable search

in violation of the Fourth Amendment. I agree with *Rabb* that the outcome of this case is determined by *Kyllo* rather than *Place* or *Caballes* because the search in *Kyllo* involved a home. While *Place* and *Caballes* involved canine sniffs, the sniffs occurred in public places. Given the historical Fourth Amendment protection of the home, I find *Place* and *Caballes* distinguishable on this basis. Moreover, I would note that the Supreme Court has yet to address the intersection of the logic of *Place* and *Caballes* with the historical protection of the home under the Fourth Amendment and *Kyllo*. I agree with the *Rabb* court that "[i]f the Fourth Amendment has any meaning at all, a dog sniff at the exterior of a house should not be permitted to uncloak this remaining bastion of privacy, the most sacred of places under Fourth Amendment jurisprudence." *Rabb, supra* at 1189. Because the canine sniff in this case constituted the use of a sensory-enhancing method to effectuate an unreasonable search of defendant's home, any evidence discovered was obtained in violation of the Fourth Amendment and Const 1963, art 1, § 11.[5] I would therefore affirm the order of the trial court suppressing the evidence as fruit of the poisonous tree. *Wong Sun, supra* at 484-488.

---

[5] The prosecution concedes that absent evidence revealed by the canine sniff, there is insufficient independent and lawfully obtained evidence to establish probable cause.