# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
January 3, 2019

v

JAVAAN MICHAEL JAMES,

        Defendant-Appellant.

No. 339504
Calhoun Circuit Court
LC No. 2016-002790-FH

Before: SWARTZLE, P.J., and SAWYER and RONAYNE KRAUSE, JJ.

PER CURIAM.

A jury convicted defendant of two counts of animal-fighting, under MCL 750.49(2)(a); and one count of possessing animal fighting equipment, MCL 750.49(2)(h).[1] As defendant was a third-offense habitual offender, MCL 769.12, the trial court sentenced defendant to concurrent terms of 24 months to 8 years' imprisonment. We affirm but remand for correction of the judgment of sentence.

This case arises from defendant's ownership of five dogs: Chico, Chopper, Daisy, China, and Mayweather. On July 13, 2016, at roughly 3:00 p.m., Sergeant Kurt Roth of the Battle Creek Police Department arrived at a residence located at 168 Battle Creek Avenue, Battle Creek, Michigan, while he was assisting the Special Investigations Unit execute a warrant. Not long after Sergeant Roth arrived, he noticed that there were dogs in the backyard, and, seeing that two of them were injured, he contacted Officer Mike Ehart, the Animal Control Officer of the Battle Creek Police Department, to investigate the situation.

---

[1] The original charging document and judgment of sentence cite MCL 750.49(2)(c) for the offense of possessing animal fighting equipment. However, MCL 750.49(2)(c) is not the charge discussed throughout the trial. Rather, the applicable statute is MCL 750.49(2)(h). Therefore, we remand for the correction of MCL 750.49(2)(c) to MCL 750.49(2)(h) in the judgment of sentence. See *People v Katt*, 248 Mich App 282, 312; 639 NW2d 815 (2001) (explaining that, if a judgment of sentence contains an error, it is appropriate to remand the matter for the ministerial task of correcting the error).

In the backyard, Chico was in a kennel, while the other dogs were separated and tethered by roughly 15-pound chains attached to tight, heavy collars. When Officer Ehart walked in the yard, none of the dogs were aggressive with him, and he could touch each one. China and Daisy had severe injuries, and because China could not walk on her right front leg, Officer Ehart carried her in order to transport the dogs to the Calhoun County Animal Shelter. Before leaving the residence, Officer Ehart advised defendant that he was taking the dogs to the animal shelter and that there would be a fee. In turn, defendant, as the dogs' owner, surrendered the animals to Animal Control. Defendant also informed Officer Ehart that Daisy and China had been in a fight and were injured the previous night.

While Officer Ehart was at the animal shelter, Corporal Olson remained at the residence to take pictures and collect items of evidence related to the dogs. Amongst the items that Corporal Olson collected were the four chains used to tether Chopper, Daisy, China, and Mayweather to the yard; a treadmill; a "flirt" pole;[2] and ribbons, awards, and trophies regarding the dogs.

Tory Haywood, a veterinary technician at the Calhoun County Animal Shelter, recalled that China, Daisy, and Chopper were extremely aggressive with the other dogs at the shelter, although—as with Officer Ehart—the dogs showed no aggression toward Haywood. Dr. Dale Borders, a veterinarian who served as an expert in veterinarian medicine at the trial, examined the dogs at the shelter not long after their arrival. Again, the dogs were not aggressive toward Dr. Borders. Dr. Borders first examined China and Daisy. China's right front leg was "badly bitten," and Daisy had puncture wounds and bite wounds around her face. According to Dr. Borders, "whoever she was fighting with concentrated on her front end, right on her head." Dr. Borders noted that Daisy, China, Mayweather, and Chopper all had past injuries located on the front of their bodies—the face, front legs, chest or shoulders.[3]

Janette Reever, of the Humane Society of the United States, testified as an expert in animal welfare and dog fighting. Reever testified that dog owners preparing their dogs for a fight often use a flirt pole and treadmill. Both items are used to condition the dogs and build up their physical stamina. The flirt pole is also used to develop the dogs' eye coordination. Reever—who has been to two dog shows—explained how these shows related to dog fighting, stating that owners of fighting dogs created the shows for the purpose of legitimizing their possession of items indicative of dog fighting, such as a treadmill and flirt pole. According to Reever, a dog can be both a fighting dog and a show dog.

Defendant testified on his own behalf at trial. Defendant explained that the reason he owned his dogs was to enter them in dog shows. Accordingly, he owned the treadmill for the purpose of training the dogs for upcoming shows. However, he used the flirt pole for simple positive interaction with his dogs. Defendant denied having ever seen any old wounds on his

---

[2] A flirt pole is a pole or stick with an item desirable to the dogs tied at the end, such as a piece of rawhide.

[3] Dr. Borders did not examine Chico.

dogs, having ever participated in a dog fight, attended a dog fight, or provided any dog or equipment that he knew was going to be used in dog fighting.

Defense witness, Dennis Michael Norrod, a semi-retired judge and sponsor of pitbull terrier shows, testified that a dog fighting training program would involve equipment such as weight scales, food supplements, and cortisone steroids in addition to other equipment. Norrod confirmed that he has seen defendant present dogs at six or more shows.

Defendant argues that there was insufficient evidence to convict him of two counts of animal-fighting. We disagree.

On appeal, a claim of insufficient evidence is reviewed de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court reviews "the evidence in the light most favorable to the prosecution" and determines "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. at 428. "This Court will not interfere with the jury's role of determining the weight of the evidence or deciding the credibility of the witnesses." *People v Fletcher*, 260 Mich App 531, 561; 679 NW2d 127 (2004).

The animal-fighting statute, MCL 750.49(2)(a), provides, in pertinent part, that a person shall not knowingly "[o]wn, possess, use, buy, sell, offer to buy or sell, import, or export an animal for fighting or baiting . . . ."[4]

In convicting defendant of this crime, the jury found sufficient evidence to establish the following elements beyond a reasonable doubt with respect to two of defendant's dogs: (1) that defendant owned, possessed, used, bought, sold, offered to buy or sell, imported, or exported (2) an animal (3) for fighting or baiting, and (4) did so knowingly.

As an initial matter, there is no dispute that defendant owned the dogs; nor is there a dispute that the dogs were "animals" within the meaning of the statute.[5] As such, there is sufficient evidence to establish elements one and two of the offense.

There is also sufficient evidence to establish the third element of the offense—that defendant owned and used at least two of the dogs for fighting or baiting. Although the prosecution's evidence was largely circumstantial, "circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." See *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000).

---

[4] "Baiting" is not defined in the statute. However, summarizing Reever's testimony on "bait dogs," bait dogs are used to teach younger dogs and to provide insight whether the younger dogs have the fighting style and drive to fight that the dog owner desires. Bait dogs are typically fighting dogs that have done well in the pit but are too old to keep fighting there.

[5] Under MCL 750.49(1), an "animal" is a vertebrate other than a human.

First, the injuries and location of the injuries to the dogs were consistent with fighting dogs. According to Reever, because fighting dogs fight face-to-face, most of their injuries are concentrated around the face and front legs. When the officers discovered defendant's dogs in his backyard on July 13, 2016, Daisy and China had severe fresh wounds. Daisy's injuries were to her face and neck area, in that her face was swollen and was surrounded by puncture wounds. As would have been the case if Daisy had been in a dog fight, Dr. Borders testified that "whoever she was fighting with concentrated on her front end, right on her head." Also like a fighting dog, both of China's front legs were injured, and her right leg was unable to bear any weight. Dr. Borders described China's right leg as "badly bitten." Furthermore, China and Daisy exhibited signs of old wounds, primarily on their faces and front legs. Reever testified: "[B]oth dogs had injuries that were consistent with dog fighting. Extensive both scarring and injuries to the face, the front legs, and also elsewhere on the body." Chico and Chopper also had scarring primarily on the front of their bodies.

Additionally, three of defendant's dogs—China, Daisy, and Chopper—exhibited the temperament of a fighting dog. Dr. Borders, Haywood, and Officer Ehart all testified that the dogs were not aggressive with them and that they were able to touch the dogs. However, the above three dogs were extremely aggressive with other dogs, to the extent that, after spending a few months at the Calhoun County Animal Shelter, the three dogs had to be euthanized. Mayweather and Chico, in contrast, were fearful when other dogs showed aggression towards them. Thus, of the five dogs, only China, Daisy, and Chopper had the trait of "gameness"—the desire to fight—that defined a fighting dog.

In addition to the above evidence, the way that defendant secured his dogs in his yard and the equipment at defendant's residence also assisted in establishing that defendant owned and used the dogs for fighting or baiting. Reever explained that fighting dogs are kept separate from each other, secured by heavy chains attached to heavy, tight collars. Reever further explained that the purpose of keeping dogs in this manner is to avoid a "yard accident," when a dog breaks free and attacks another. Defendant secured the dogs to his yard the same way. Defendant also had a flirt pole and treadmill at his residence. Although these items can be used for training dogs for dog shows, they are also a common way to prepare a dog for a dog fight. For these reasons and viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence to establish element three of the offense—that defendant owned and used Chico, Chopper, Daisy, and China; Daisy and China in particular—for fighting or baiting.[6]

Lastly, based on the facts and evidence above, there is sufficient evidence to establish that defendant knowingly owned and used Daisy, China, Chopper, and Chico for fighting or baiting.

"Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the

---

[6] Daisy and China had fresh injuries and were two of the three dogs that showed aggression toward other dogs.

defendant may provide." *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002) (quotation marks and citation omitted).

As such, there was sufficient evidence for the jury to convict defendant of two counts of animal-fighting under MCL 750.49(2)(a). See *Lee*, 243 Mich App at 167-168.

Next, defendant argues that insufficient evidence existed for a reasonable jury to convict him of possessing animal fighting equipment under MCL 750.49(2)(h). We disagree.

MCL 750.49(2)(h) provides, in pertinent part, that a person shall not knowingly "[o]wn, possess, use, buy, sell, offer to buy or sell, transport, or deliver any device or equipment intended for use in the fighting [or] baiting . . . of an animal . . . ."

Accordingly, in convicting defendant of possessing animal fighting equipment, the jury found sufficient evidence to establish the following elements beyond a reasonable doubt: (1) that defendant owned, possessed, used, bought, sold, offered to buy or sell, transported, or delivered (2) any device or equipment (3) intended (4) for use in the fighting or baiting (5) of an animal (6) knowingly.

As an initial consideration, there is no dispute that defendant's dogs were animals as defined under the statute. There is also no dispute that defendant owned and used the treadmill and the flirt pole, which the parties agreed were the only pieces of equipment present in this case. As such, there is sufficient evidence to establish elements one, two, and five of the offense.

Turning to the third and fourth elements of the offense, there is also sufficient evidence to establish that defendant owned equipment intended for fighting. "Intended" is not defined within the statute. However, *Merriam-Webster's Collegiate Dictionary* (11th ed), defines "intended" as "expected to be such in the future." Applying this definition, the treadmill and flirt pole are intended for more than one use. Defendant and Reever agreed that the treadmill and flirt pole develop physical stamina and develop dog eye coordination. Thus, they are used in dog training, in general, and as such, are used for dog fighting as well as dog shows.

Defendant asserts that the flirt pole and treadmill can be explained by his preparation for dog shows. However, in light of the above circumstances in Issue I and viewing the evidence in the light most favorable to the prosecution, the jury could reasonably infer that defendant owned this equipment to prepare his dogs for dog fights. See *Lee*, 243 Mich App at 167-168 (providing that "circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime"). Additionally, "the prosecution need not disprove all theories consistent with defendant's innocence; it need only introduce sufficient evidence to convince a reasonable jury of its theory of guilt despite the contradictory theory or evidence a defendant may offer." *People v Solmonson*, 261 Mich App 657, 662-663; 683 NW2d 761 (2004). For these reasons, there was sufficient evidence to establish elements three and four of the offense—that defendant owned and used equipment intended for dog fighting.

Lastly, based on the foregoing, there was sufficient evidence that defendant knowingly owned and used his equipment intended for use in the fighting of his dogs. For these reasons, there was sufficient evidence for the jury to find beyond a reasonable doubt that defendant committed the offense of possessing animal fighting equipment.

Defendant also argues that the trial court erred in denying his motion to quash because the police entered his residence on July 13, 2016, without a warrant, and both the July 12, 2016 and July 13, 2016 warrants were not supported by probable cause. We disagree.

"A trial court's findings on a motion to suppress evidence as illegally seized will not be reversed on appeal unless clearly erroneous, while questions of law and the decision on the motion are reviewed de novo . . . ." *People v Waclawski*, 286 Mich App 634, 693; 780 NW2d 321 (2009) (citations omitted). A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court has made a mistake. *Id*.

When reviewing a magistrate's decision that probable cause existed, this Court considers "whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992). "[A] magistrate's decision regarding probable cause should be paid great deference." *People v Martin*, 271 Mich App 280, 297; 721 NW2d 815 (2006). A search warrant cannot be issued unless it is supported by probable cause, which exists when "there is a 'substantial basis' for inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983).

Probable cause may be based, in part, on information supplied by a confidential informant, provided that the affidavit included "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b). "If the search warrant is supported by an affidavit, the affidavit must contain facts within the knowledge of the affiant and not mere conclusions or beliefs." *Martin*, 271 Mich App at 298. "Personal knowledge can be inferred from the stated facts." *Id*. at 302.

As an initial matter, we note that defendant's first argument is factually inaccurate and, as such, is without merit. Defendant alleges that the police entered his home without a warrant on July 13, 2016, and therefore, he claims that the prosecution must demonstrate an exigent circumstance to validate the entry. However, according to the affidavits and search warrants for July 12, 2016 and July 13, 2016, as well as the trial court's ruling on the motion to suppress, the officers entered 168 Battle Creek Avenue pursuant to a warrant that had a mere typographical error. Thus, the officers entered defendant's residence pursuant to a warrant. Nonetheless, upon catching the error, the officers waited until a corrected warrant was obtained before seizing any evidence. Accordingly, defendant's argument is based on an inaccurate factual premise. As such, defendant's argument must fail. See *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001) (explaining that it is the responsibility of the defendant, not the Court, to search for facts underlying his argument).

Defendant also argues that the trial court erred in denying his motion to suppress because the search warrants were not based on probable cause, as the affidavits provided insufficient information as well as unreliable information from the confidential informant. We disagree.

Probable cause may be based, in part, on information supplied by a confidential informant, provided that the affidavit included "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable."

MCL 780.653(b). "[T]he fact that the police previously had utilized information provided by [a particular] informant in other warrant requests with successful results provide[s] . . . support for the magistrate to conclude that the informant [i]s credible and reliable." *People v Stumpf*, 196 Mich App 218, 223; 492 NW2d 795 (1992).

The confidential informant in this case, X, spoke with personal knowledge of the information that he provided to the affiant, Officer Kelson Gettel. X performed a controlled hand-to-hand buy at a prearranged location, 168 Battle Creek Avenue. Officer Gettel observed the buy and searched X before and after the transaction. X provided Officer Gettel the defendant's name, informed Officer Gettel that defendant owned the house, and provided Officer Gettel with a bag of what X suspected was heroin, a fact that Officer Gettel later confirmed. These facts demonstrate X's reliability and personal knowledge pursuant to MCL 780.635(b). Furthermore, that Officer Gettel observed the transaction and verified the substance as heroin established that the affidavit contained facts within the knowledge of the affiant. See *Martin*, 271 Mich App at 298 (explaining that, "[i]f the search warrant is supported by an affidavit, the affidavit must contain facts within the knowledge of the affiant and not mere conclusions or beliefs"). Additionally, Officer Gettel's statement in the affidavit that "X has proven credible in the past by purchasing heroin for the Battle Creek Police Special Investigation Unit which has resulted in the seizure of controlled substances" further undermines defendant's argument that probable cause does not exist because the affidavit relies on information provided by an informant. See *Stumpf*, 196 Mich App at 223 (providing that, "the fact that the police previously had utilized information provided by [a particular] informant in other warrant requests with successful results provide[s] . . . support for the magistrate to conclude that the informant [i]s credible and reliable").

Based on the foregoing and because this Court has stated that "[t]he controlled purchases of cocaine [are] sufficient to establish probable cause to permit the magistrate to issue the warrant," it stands to reason that there was probable cause for the warrants in this case. See *People v Head*, 211 Mich App 205, 209; 535 NW2d 563 (1994); see also *Martin*, 271 Mich App at 297 (providing that "a magistrate's decisions regarding probable cause should be paid great deference").

Accordingly, the trial court did not err in denying defendant's motion to suppress the evidence. See *Martin*, 271 Mich App at 298.

Defendant's convictions are affirmed. However, we remand for the ministerial task of correcting the judgment of sentence. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Amy Ronayne Krause