*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARTEZ DENEAL FORD,

        Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 359985
Wayne Circuit Court
LC No. 20-001422-01-FC

Before: GARRETT, P.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, mutilation of a dead body, MCL 750.160, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant to concurrent prison terms of 40 to 50 years' imprisonment for the second-degree murder conviction and 5 to 10 years' imprisonment for the mutilation-of-a-body conviction, and a consecutive two-year prison term for the felony-firearm conviction. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant's convictions arise from the shooting death of Donte Marsh, the victim, and the subsequent burning of his body. A witness described seeing two assailants pull the victim[2] from the back seat of a vehicle in an apartment complex parking lot on April 2, 2019, at approximately 9:00 a.m. One of the two assailants held the victim, and the other assailant shot him multiple times. The assailants then placed the victim in the back seat of the vehicle and drove off. A short while later, the police responded to a vehicle fire less than two miles from the shooting scene. The

---

[1] The jury acquitted defendant of the charge of first-degree premeditated murder, MCL 750.316(1)(a), but found him guilty of the lesser offense of second-degree murder. Defendant was also acquitted of an additional charge of felony-firearm.

[2] This witness did not specifically identify the victim, but his identity was ascertained from the collective evidence admitted at trial.

victim's deceased body was discovered inside the burning vehicle. The medical examiner determined that the victim died from multiple gunshot wounds, and he was likely deceased before the vehicle fire started.

Evidence was presented at trial that the victim sold drugs at the apartment complex where the shooting occurred. Defendant was identified as the victim's friend or associate. Surveillance videos captured defendant and the victim together on the evening of April 1, 2019, in a vehicle that matched the description of the vehicle seen at the shooting scene. From the footage, it was learned that defendant wore a black baseball cap that matched the description of a hat found at the shooting scene. Defendant was identified as a likely contributor to DNA found on that black cap. A cell phone analyst determined that a cell phone linked to defendant was in the area at the time of the victim's shooting. After the shooting, the cell phone was tracked moving away from Detroit. The phone was in Ohio later that afternoon, and two weeks later it was in Kentucky, where defendant was ultimately arrested.

## II. MOTION TO DISMISS

Defendant contends that the trial court erred by denying his motion to dismiss under the Interstate Agreement on Detainers ("IAD"), MCL 780.601. We disagree.

The interpretation and application of the IAD presents a question of law reviewed de novo. *People v Duenaz*, 306 Mich App 85, 107-108; 854 NW2d 531 (2014). We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *People v Witkoski*, 341 Mich App 54, 59; 988 NW2d 790 (2022). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). The appellate court reviews de novo a trial court's rulings on underlying questions regarding the interpretation of the IAD. *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012).

"The IAD creates uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *People v Swafford*, 483 Mich 1, 8; 762 NW2d 902 (2009) (quotation marks and citation omitted). Michigan entered into the IAD to encourage the timely resolution of all outstanding charges against prisoners. *Id.* To encourage the timely resolution of all charges pending, the IAD imposes time limits on prosecutions as provided in MCL 780.601, Article III(a), which states, in pertinent part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided that for good cause shown in open

-2-

court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

The trial court must dismiss any charges brought against a defendant under the IAD if there has been a failure to strictly comply with the applicable time provision. See *People v Stone*, 269 Mich App 240, 243; 712 NW2d 165 (2005). However, the statute also provides that the 180-day limit may be tolled if the trial court finds upon good cause shown that a continuance is reasonable or necessary. *Id*.

The parties did not appear to dispute that defendant signed the written notice and request for final disposition on October 14, 2019, and that the prosecution received notice on October 28, 2019. Therefore, the statutory 180-day period would have ended on April 24, 2020. Defendant broadly argues that docket congestion cannot constitute good cause for a continuance under the IAD, citing MCR 6.004(C)(6). But, MCR 6.004(C) does not implement the IAD; instead, it applies to the release on bond of defendants who are incarcerated for 180 days or more as a result of pending felony charges. Although the rule also specifies various periods of delay that are to be excluded for purposes of computing the 180-day period, MCR 6.004(C)(6) states that delay caused by docket congestion should not be considered. MCR 6.004(C)(6) does not apply to the 180-day period under MCL 780.601, Art III(a), which instead allows for a continuance on a showing of good cause that a continuance is "reasonable or necessary," language that does not appear in MCR 6.004(C). Therefore, defendant's reliance on MCR 6.004(C)(6) in support of his argument that the trial court was not permitted to consider docket congestion is misplaced.

The trial court found that good cause for a continuance was demonstrated because of the onset of the COVID-19 pandemic and resultant emergency orders, which were issued before the 180-day period would have expired on April 24, 2020. In March 2020, the Governor declared a state of emergency because of the onset of the COVID-19 pandemic and the Supreme Court, in response, issued Administrative Order No. 2020-1, effective immediately, and adopted emergency procedures in the state's court facilities. See 505 Mich xcix (2020). Effective March 18, 2020, the Supreme Court imposed restrictions on trial court proceedings, limiting access to courtrooms to no more than 10 people. Administrative Order No. 2020-2, 505 Mich cii (2020). Beginning April 23, 2020, the Supreme Court delayed all jury trials until June 22, 2020, or until further order of the Court. See Administrative Order No. 2020-10, 505 Mich cxxxix (2020). On May 20, 2020, the Wayne Circuit Court issued an emergency order suspending bench trials until July 7, 2020, and suspending jury trials until August 17, 2020. Defendant had an absolute right to a jury trial, US Const, Am VI; MCR 6.401, and he never sought to waive that right. Thus, before the 180-day period expired, and at the time defendant filed his motion to dismiss, the trial court could not proceed to try defendant's case. Under the circumstances, the trial court did not err by finding that there was good cause that a continuance was reasonable or necessary.

This conclusion is supported by this Court's decision in *People v Witkoski*, 341 Mich App 54, 57-58, 62-64; 988 NW2d 790 (2022), which considered the effect of delay related to the COVID-19 pandemic on a defendant's claim that dismissal was required under the statutory 180-rule, MCL 780.131, which requires a prosecutor to act in good faith and proceed promptly to move a defendant's case to the point of readiness for trial within 180 days. This Court reversed a trial court's decision dismissing the case where "a significant amount of the delay in bringing defendant's case to trial was not the fault of the prosecutor, but rather resulted from our Supreme

-3-

Court's decision to suspend jury trials during the early days of the COVID-19 pandemic." *Id.* at 56, 62-64.

Defendant does not dispute that the prosecutor lost the ability to bring his case to trial before his 180-day period expired and did not regain that ability before he filed his motion to dismiss on June 8, 2020. He argues, however, that the Michigan Supreme Court and the Wayne Circuit Court did not have authority to suspend the IAD or trials. However, the Michigan Supreme Court did not suspend the IAD. It only suspended trial proceedings, which the trial court found constituted good cause demonstrating that a continuance was reasonable or necessary for purposes of proceeding under the IAD. Moreover, we reject defendant's argument that the Supreme Court lacked the authority to suspend trials, given that "the Supreme Court has superintending control over all state courts." *Carter v DTN Mgt Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360772); slip op at 6, lv granted 511 Mich 1025 (2023), citing Const 1963, art 6, § 4; see also *Lapeer Co Clerk v Lapeer Circuit Judges*, 465 Mich 559, 569; 640 NW2d 567 (2002). "Thus, the Supreme Court had authority to manage the operations of Michigan courts amidst a global pandemic." *Carter*, ___ Mich App at ___; slip op at 6. Therefore, the trial court did not abuse its discretion by denying defendant's motion to dismiss after finding that there was good cause demonstrating that a continuance was reasonable or necessary.

### III. MISTRIAL

Defendant contends that the trial court erred by failing to declare a mistrial after a witness repeatedly made prejudicial comments and outbursts about being afraid in light of what she had witnessed and her fear continuing even as she testified at trial. We disagree.

Because defendant never requested a mistrial in the trial court, this issue is unpreserved. *People v Nash*, 244 Mich App 93, 96; 625 NW2d 87 (2000). Therefore, we review this issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999); *People v Miller*, 326 Mich App 719, 732; 929 NW2d 821 (2019). An error is plain if it is "clear or obvious," and an error affects substantial rights if it "affected the outcome of the lower court proceedings." *Carines,* 460 Mich at 763. In addition,

> an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. (quotation marks, citation, and brackets omitted).]

Defendant objects to several statements made by a witness who testified that she observed two assailants attack the victim before shooting him multiple times. When the prosecutor asked the witness what happened after the shooting, the witness stated: "I called 911. I was scared to death. I've been scared ever since. I moved out of my apartment and everything." When the prosecutor then asked the witness if she called the police after she witnessed two men throwing the victim into the backseat of a vehicle, the witness responded: "I called 911. Scared me to death. I'm still scared. Can't you tell when I'm talking?" After the witness listened to her 911 call, she stated: "I'm so scared, see. Still am. That's me."

The prosecutor asked the witness how seeing the shooting made her feel. The witness stated: "I'm about to – I'm scared now. I've been scared ever since. I moved up out of my apartment, like, a week. I moved out of my apartment and I was finna [sic] move – move away from here because y'all ain[']t got the other guy. There were three guys in that car." Then, the following exchange took place:

> *The Witness*: Oh, man, I'm so scared. Y'all better get the other guy because they gonna come and get me.

> *Ms. Ciaffone [The Prosecutor]*: Okay, I'm gonna stop you. Just wait until I ask you a question.

> *The Witness*: Okay.

> *Ms. Ciaffone*: Thank you, . . . . One minute.

> *The Court*: They'll get 'em.

> *The Witness*: Scared.

Later, the witness stated that, after the testimony, she would leave town. And, when the witness was dismissed and about to leave the stand, the witness once again expressed being scared. Defense counsel objected to the statement. The trial court stated that the jury surely would disregard the remark apparently in light of the witness's demeanor.[3]

"A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Beesley*, 337 Mich App 50, 54; 972 NW2d 294 (2021) (quotation marks and citation omitted). In order "for a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense." *Id*. (quotation marks and citation omitted). Moreover, the "moving party must establish that the error complained of is so egregious that the prejudicial effect can be removed in no other way." *Id*. (quotation marks and citation omitted).

Except for one exchange, the witness's comments, that she was scared when she witnessed the shooting and continued to be scared, were not responsive to the prosecutor's questions, but were interjected along with her answers to otherwise proper questions. Generally, "[a]n unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). The only time the witness responded to a direct question was when the prosecutor asked her how she felt after she

---

[3] The trial court commented that the witness is who she is. And, in the transcript, there is no apparent indication that the witness engaged in "outbursts" as opposed to mere unresponsive volunteered answers. No affidavit was presented to support the contention that prejudicial outbursts occurred, and no such record was made. And, in its opinion and order denying defendant's motion for a new trial, the trial court concluded that the witness "did not make loud, dramatic 'outbursts' in the courtroom." Defendant does not challenge this factual determination.

witnessed the shooting and the victim was thrown into the backseat of the vehicle. Further, the witness's comments were not so egregious that any perceived prejudice could not have been removed by an appropriate curative instruction. *Beesley*, 337 Mich App 54. The witness testified that she was scared when she made the 911 call, she was still scared because she had witnessed two men attacking the victim, and one of the assailants had not been apprehended. The witness also described seeing a violent confrontation in which two assailants attacked a third man, during which one of the assailants held the victim, and the other assailant shot him multiple times. It is logical that a witness would feel scared after seeing such an event.

Moreover, the primary issue at trial was defendant's identity as one of the assailants and the witness's testimony was not probative of that issue. The significance of the witness's testimony was that the victim arrived at the apartment complex in the vehicle with his two assailants and was shot there. Defendant did not dispute that the victim was shot at that location or that the victim was set on fire in the backseat of the vehicle a short distance away. The witness was unable to identify defendant as one of the two assailants. The witness could only describe the assailants as a couple of years older and slimmer than the victim. The fact that this witness's testimony was not directly probative of identity at trial lessened any perceived prejudice. *Haywood*, 209 Mich App at 228-229.

When defense counsel objected to the witness's comments as she was leaving the witness stand, the trial court responded that the jury should disregard those remarks. In addition, in its closing instructions, the trial court instructed the jury that it was to decide the case only on the basis of the properly admitted evidence, and that it could not let sympathy or prejudice influence its decision. These instructions were sufficient to protect defendant's right to a fair trial. See *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011) (jurors are presumed to follow their instructions, and the instructions are presumed to cure most errors). Because the witness's statements were not so egregious that their prejudicial effect could only be removed by a mistrial, the trial court did not err by failing to sua sponte declare a mistrial. Accordingly, defendant failed to demonstrate plain error affecting his substantial rights. *Carines*, 460 Mich at 762-763; *Miller*, 326 Mich App at 732.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant submits that he was deprived of the effective assistance of counsel at trial because counsel (1) failed to move for a mistrial on the basis of the witness's allegedly prejudicial remarks discussed in Section III, (2) failed to file a motion to suppress defendant's cell phone records, and (3) failed to object to photographs of the victim's burned body.

A claim of ineffective assistance involves mixed questions of fact and constitutional law. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews a trial court's factual findings for clear error. *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022). Whether those facts constitute a violation of the defendant's right to the effective assistance of counsel is a question of law that this Court reviews de novo. *Id*.

Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "To establish ineffective assistance of counsel, defendant must show (1) that trial counsel's performance was below an

objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). It is presumed that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). The burden of establishing the factual predicate for a claim of ineffective assistance is on the defendant. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## A. FAILURE TO MOVE FOR A MISTRIAL

Defendant first alleges that counsel was ineffective by failing to move for a mistrial due to the witness's outbursts about feeling scared. We disagree.

As discussed in Section III, the witness's comments were unresponsive, volunteered answers to proper questioning, and therefore, not grounds for granting a mistrial. *Haywood*, 209 Mich App at 228. It was not objectively unreasonable for counsel not to request a mistrial. Moreover, the witness's comments were not so egregious that any prejudicial effect could not have been removed by a curative instruction, *Beesley*, 337 Mich App 54. The trial court also protected defendant's right to a fair trial by instructing the jury to disregard the witness's remarks that she made while leaving the witness stand, by instructing the jury that it was to decide the case only on the basis of the properly admitted evidence, and by instructing the jury that it could not let sympathy or prejudice influence its decision. Therefore, defendant has not established that he was prejudiced by counsel's failure to request a mistrial.

## B. FAILURE TO FILE A MOTION TO SUPPRESS

Defendant next asserts that counsel was ineffective for not moving to suppress any evidence obtained from a search of defendant's cell phone records. Although this evidence was obtained pursuant to a search warrant, defendant contends that the warrant was invalid because the affidavit for the search warrant did not contain sufficient facts to connect the cell phone to the alleged crimes. We disagree.

A search warrant may not be issued without a showing of probable cause to justify the search. See *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022), citing US Const, Am IV; Const 1963, art 1, § 11. Probable cause to issue a search warrant exists if there is a substantial basis for inferring a fair probability that contraband or evidence of a crime exists in the location to be searched. *People v Brown*, 297 Mich App 670, 675; 825 NW2d 91 (2012). A magistrate's decision to issue a search warrant is reviewed by examining the search warrant and underlying affidavit "in a common-sense and realistic manner." *People v Russo*, 439 Mich 584, 604; 487 NW2d 698 (1992). The appellate court must determine, under the totality of the circumstances, "whether a reasonably cautious person could have concluded . . . that there was a substantial basis for the magistrate's finding of probable cause." *Id.*; see also *People v James*, 327 Mich App 79, 90; 932 NW2d 248 (2019).

The officer in charge submitted an application for a search warrant to obtain records for a cell phone number linked to defendant. In his underlying affidavit, the officer set forth facts related to the shooting at the apartment complex, the officers' investigation of the circumstances

surrounding that shooting, an eyewitness's account of the shooting, evidence found at the shooting scene, including a black baseball cap with white trim, and the officers' related investigation of the vehicle fire at a nearby address. The officer also included information regarding the identification of the vehicle and discovery of the victim's burned body inside the vehicle, and the officer's conversation with the victim's family. The officer averred that he spoke with the victim's brother, who told the officer that he had heard that defendant killed his brother. The victim's brother also told the officer that defendant was with the victim before the shooting and that defendant was known to wear a black hat with white trim. The officer also spoke to the victim's mother, who saw the victim driving a silver Infiniti SUV, which matched a description of the involved vehicle, on April 1, 2019, around 9:00 p.m. The officer further averred that he reviewed video footage from a gas station on Seven Mile Road and observed defendant exit the front passenger seat of a silver Infiniti SUV at 8:08 a.m. on April 2, 2019. The officer also stated that he reviewed footage from a liquor store on Seven Mile Road from April 1, 2019, at 11:32 p.m. which showed defendant in a silver Infiniti SUV wearing the same black cap that was recovered from the scene of the shooting. The officer further set forth that another officer gathered video surveillance of defendant purchasing the cell phone with the number that the victim's girlfriend identified as defendant's phone number.

We reject defendant's contention that there were insufficient facts linking defendant's cell phone to the charged crimes reflected in the affidavit. The affidavit contained facts that would allow a reasonably cautious person to conclude that there was a substantial basis to find probable cause that defendant was linked to both the victim's shooting death and to the cell phone number that was the object of the search. And, the officer-affiant averred that, in light of his training and experience, call detail records were likely to contain information that will aid investigators in discovering the identity of persons responsible for the crime being investigated. Considering the totality of the circumstances, the affidavit contained sufficient facts to enable a reasonably cautious person to conclude that there was a substantial basis for the magistrate's finding that there was probable cause that evidence of criminal activity would be found in the call detail records for the cell phone number linked to defendant. Accordingly, defendant has not demonstrated that the search warrant was invalid, and therefore, his claim that defense counsel was ineffective for failing to file a motion to suppress the cell phone evidence fails.

## C. FAILURE TO OBJECT TO PREJUDICIAL PHOTOGRAPHS

Defendant also asserts that defense counsel was ineffective for not objecting to the admission of 25 photographs from the fire scene. Defendant concedes that not all of these photographs were inadmissible, but he submits that defense counsel should have objected to some of them, particularly those that depicted the victim's burned body because they were unfairly prejudicial under MRE 403. We disagree.

Initially, defendant does not specify which particular photos he believes were inadmissible. Defendant failed to meet the factual predicate to establish his ineffective-assistance claim by failing to identify the photographs. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) ("Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim."). In any event, it is not apparent from the available record that defense counsel was ineffective for failing to object to various photographs because gruesomeness alone is not a basis

for excluding photographs. *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212; 539 NW2d 504 (1995). And, the trial court determined that the photographs were clearly relevant, not unfairly prejudicial, and pertinent to the offense of mutilation of a dead body. Therefore, the record does not support defendant's claim that trial counsel was ineffective for failing to object to the photos of the victim's body in the burned vehicle.

## V. VALIDITY OF DEFENDANT'S SENTENCE FOR SECOND-DEGREE MURDER

Lastly, defendant contends that the trial court's sentence of 40 to 50 years for second-degree murder is invalid because it violates the two-thirds rule of MCL 769.34(2)(b), and is contrary to *People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972). Yet, defendant further acknowledges that the *Tanner* rule and MCL 769.34(2)(b) do not apply to sentences where the statutory maximum punishment is "life or any term of years." *People v Powe*, 469 Mich 1032; 679 NW2d 67 (2004). Because this Court and the lower courts are bound by the precedent established by our Supreme Court until it acts, *People v Metamora Water Serv, Inc*, 276 Mich App 376, 387-388; 741 NW2d 61 (2007), we reject defendant's argument that his sentence is invalid. *Id*.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michael J. Riordan
/s/ Anica Letica