*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 22, 2024
10:44 AM

Plaintiff-Appellee,

v

No. 368159
St. Clair Circuit Court
LC No. 2022-002631-FH

MICHAEL DAVID ZELLER,

Defendant-Appellant.

Before: FEENEY, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of delivery or manufacture of methamphetamine (3.9 grams), MCL 333.7401(2)(b)(*i*), and two counts of resisting or obstructing a police officer, MCL 750.81d(1), and also argues that the sentence imposed was unreasonably harsh and disproportionate. The trial court sentenced defendant to 51 to 240 months' imprisonment for the delivery or manufacture of methamphetamine conviction and 121 days' imprisonment for each resisting or obstructing a police officer conviction. Because the trial court properly denied defendant's motion to suppress, and because defendant's sentence was not disproportionate or unreasonable, we affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arose from a traffic stop initiated by a police officer and border patrol agent. Defendant was one of three passengers in the car. The driver was stopped for an obscured license plate. After the officer spoke with the driver, the officer initiated a narcotics investigation. The agent spoke with defendant who appeared nervous. The passengers and the driver were removed from the car, and a canine conducted a sniff search under the guidance of the agent. The canine twice alerted to the presence of drugs and the agent advised the officer that the dog was alerted to the vehicle, at which point the officer decided to search defendant. The officer then informed defendant that he was going to search him. Defendant refused, claiming the search was illegal. The officer explained that the search was legal, after which defendant became agitated, pulled out his phone, began to record the interaction, and continued to refuse to be searched. The officer and agent then struggled to get handcuffs on defendant. Once defendant was in handcuffs, the officer

-1-

and agent searched the car. No drugs were found, but a bag of methamphetamine was found on defendant, and another bag was found outside the car. Defendant was charged as noted above.

In the trial court, defendant moved to suppress the evidence found in the search arguing the search was unconstitutional because there was no probable cause justifying the search. Defendant argued the canine could have detected marijuana in the sniff search, which is legal to possess under Michigan law, and there had been no drugs found before defendant was searched. In response, the prosecution argued the totality of the circumstances provided sufficient evidence to establish probable cause, including the fact that the officer and agent observed defendant looking nervous, the fact that they observed a passenger reaching for something on the floor of the car, and the fact that the canine alerted to the presence of drugs. The trial court concurred with the prosecution and denied defendant's motion to suppress.

Defendant was found guilty of the crimes listed above. At sentencing, defense counsel requested the trial court deviate from the minimum sentencing guidelines. The trial court adjourned the sentencing to allow both parties to file a sentencing memorandum on the issue. Defendant argued the deviation was necessary for defendant to enroll in a drug treatment program while imprisoned. Defendant also argued that he should not receive a longer minimum sentence than one of the other passengers in the car, who had possessed even more drugs than defendant, and who had been sentenced to a minimum of three years in prison. The prosecution maintained that the recommended sentence in the presentence investigation report (PSIR) was proportional and appropriate in light of defendant's actions in the case.

The trial court concurred with the prosecution, noted that the recommendation made in the PSIR was at the lowest end of the sentencing guidelines (the court indicated the PSIR could have recommended an 85-month minimum), and sentenced defendant as delineated above. This appeal followed.

## II. MOTION TO SUPPRESS

Defendant argues the trial court erred when it denied his motion to suppress. We disagree.

### A. STANDARDS OF REVIEW

"We review for clear error a trial court's findings of fact in a suppression hearing, but we review de novo its ultimate decision on a motion to suppress." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "We review de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *Id.* "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *People v James*, 327 Mich App 79, 90; 932 NW2d 248, 255 (2019).

### B. ANALYSIS

Defendant argues his arrest and subsequent search was in violation of the Fourth Amendment. The Federal and Michigan Constitutions guarantee the right against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The Michigan Supreme Court has ruled that "the Michigan Constitution is to be construed to provide the same protection as that secured by the Fourth Amendment, absent compelling reason to impose a different interpretation."

*People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011) (quotation marks and citation omitted).

"It is blackletter law that a 'seizure' within the meaning of the Fourth Amendment occurs when, in view of all the circumstances, a reasonable person would conclude that he or she was not free to leave." *People v Kavanaugh*, 320 Mich App 293, 300; 907 NW2d 845 (2017). "The lawfulness of a search or seizure depends on its reasonableness." *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000). "Searches and seizures conducted without a warrant are unreasonable per se, subject to several specifically established and well-delineated exceptions." *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* at 115. Further, "when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial." *People v Vaughn*, 344 Mich App 539, 551; 1 NW3d 414 (2022) (quotation marks and citation omitted).

The defendant's search occurred in the context of a traffic stop in which one of the passengers attempted to grab something from the floor of the car, defendant appeared nervous, and a drug-sniffing dog twice alerted to the odor of drugs. A warrantless search is unreasonable " 'unless there exist both probable cause and a circumstance establishing an exception to the warrant requirement.' " *Snider*, 239 Mich App at 407, quoting *People v Mayes (After Remand)*, 202 Mich App 181, 184; 508 NW2d 161 (1993). "Probable cause exists where there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004) (quotation marks and citation omitted). The exceptions to the warrant requirement include: "(1) searches incident to a lawful arrest, (2) automobile searches, (3) plain view seizure, (4) consent, (5) stop and frisk, and (6) exigent circumstances." *Johnson v VanderKooi*, 509 Mich 524, 538; 983 NW2d 779 (2022), quoting *In re Forefeiture of $176,598*, 443 Mich 261, 266; 505 NW2d 201 (1993). "Each of these exceptions, however, still requires reasonableness and probable cause." *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011).

Defendant argues that the above facts, considered under the totality of circumstances, were insufficient to establish probable cause. He maintains the sniff search by the canine was inconclusive because it could have smelled marijuana, which was legal for a person over the age of 21 to possess, in certain quantities, pursuant to Michigan law. In other words, defendant argues that there was no substantial basis for the officer to infer a fair probability that contraband or evidence of a crime would be found on defendant where the dog's accurate alert on the vehicle could have simply been an indicator that someone in the car possessed a substance, marijuana, that would have been legal to possess. More specifically, defendant argues that the smell of marijuana no longer provides probable cause to search after the enactment of the Michigan Regulation and Taxation of Marijuana Act (MRTMA), MLC 333.27951 *et seq.* In support of that argument, defendant argues that our decision in *People v Jones*, 279 Mich App 86, 91; 755 NW2d 224 (2008), is no longer a binding precedent. We disagree with defendant's argument.

In *Jones*, this Court was called upon to determine whether a positive canine sniff conducted outside of the defendant's residence provided probable cause for a search warrant, and we held

that it was not a search for Fourth Amendment purposes. In reasoning that it was not a search, we stated: "The United States Supreme Court has held that a 'canine sniff' does not unreasonably intrude upon a person's reasonable expectation of privacy." *Jones* 279 Mich App at 91. We also stated:

> The Supreme Court later held in [*Illinois v Caballes*, 543 US 405, 407-408; 125 S Ct 834; 160 L Ed 2d 842 (2005)], that a canine sniff of a vehicle during a traffic stop, conducted absent reasonable suspicion of illegal drug activity, did not violate the Fourth Amendment because it did not implicate any legitimate privacy interest. [*Id.* at 92.]

We ultimately held "[b]inding and persuasive authority convinces us that a canine sniff is not a search within the meaning of the Fourth Amendment as long as the sniffing canine is legally present at its vantage point when its sense is aroused." *Id*. at 93.

Defendant fails to cite to any portion of the MRTMA that supports his position that its passage changed the common law as it applies to the issue of whether a drug-sniffing dog can be used to support a finding of probable cause for a search conducted during a traffic stop. Defendant likewise fails to provide any analysis or caselaw to support his position that *Jones* is no longer good law because of the enactment of the MRTMA. However, we need not decide what, if any, effect the passage of the MRTMA had upon the precedent set by *Jones*, because the holding in *Jones* is not pertinent to defendant's argument in this case.

In *Jones*, this Court held that a sniff conducted by a drug-sniffing dog outside of a residence was not a search, and therefore, it could not be deemed to violate the defendant's Fourth Amendment right against unreasonable search and seizure (the defendant had argued that a canine sniff outside of his home to sniff marijuana used an extra-sensory procedure that violated the firm line at the door of his home protected from intrusion by the Fourth Amendment). In its opinion denying defendant's motion to suppress, the trial court relied upon *Jones* for the proposition that: "A canine sniff is not a search within the meaning of the Fourth Amendment so long as the canine is legally present at is vantage point when its sense is aroused." But defendant does not argue on appeal that the canine sniff in this matter was, itself, an illegal search, i.e., he is not asserting that the agent's act of bringing out the dog and allowing it to sniff the car was an illegal search. Rather, defendant argues that the results of the search could not support a finding of probable cause because the dog could have positively alerted to marijuana, a substance that could have been legally possessed in the bar or on the persons of defendant or the other occupants of the vehicle. Thus, while the trial court noted that *Jones* stands for the proposition that a canine sniff is not a search as it applied to the circumstances in *Jones*, whether or not *Jones* remains a binding precedent does not have any effect on the analysis of the argument that defendant has raised on appeal.

Defendant also relies upon *People v Armstrong*, 344 Mich App 286, 300; 1 NW3d 299 (2022), in which this Court held "the smell of marijuana, by itself, does not give rise to probable cause unless it is combined with other factors that bolster the concern about illegal activity that may flow from the smell of marijuana." However, defendant does not demonstrate the canine smelled marijuana in this case. The record reflects that the canine alerted twice on the vehicle and that methamphetamine was found to be possessed by defendant and another passenger.

Defendant's argument that probable cause was not found in this matter, because the dog could have alerted to the presence of marijuana, is analogous to arguing that a drug-sniffing dog's alert can never provide probable cause for a search because it is possible for such a dog to provide a false alert; however, this Court has previously rejected that argument. In *People v Clark*, 220 Mich App 240, 244; 559 NW2d 78 (1996), the defendant argued that a cocaine-sniffing dog's alert cannot create probable cause for a search because it can smell even miniscule amounts of cocaine, thus giving rise to the possibility of false alerts. In response to that argument, this Court held, "While we agree that in certain cases it will be important to examine the dog's training, health, or other such conditions, we conclude that in the usual case, such as this one, all that is necessary in order to find the dog's alert to be reliable is evidence of the dog's training and current certification." Here, defendant has not challenged the dog's training or certification at the time of the search.

Defendant also argues his nervousness was not grounds, on its own, to establish probable cause. Defendant relies on the federal case of *United States v Saperstein*, 723 F2d 1221, 1228 (CA 6, 1983), where the Court of Appeals for the Sixth Circuit held nervousness was not a suspicious trait. Defendant's argument lacks merit. First, defendant's argument in this regard relies upon this Court finding that the alert by the canine was essentially a nullity, because it might have smelled marijuana, a substance that can be legally possessed; however, we have already rejected that argument. Second, the Court of Appeals in *Saperstein* specifically held nervousness was a consistent behavior for airport travelers and should not be given any weight. Defendant's situation is distinguishable from the situation in *Saperstein*. Defendant was not in an airport or another location where "certain behavior characteristics [are] inherently unsuspicious." *Id*. at 1228. Defendant was a passenger in a vehicle stopped by law enforcement for an obscured license plate. Defendant does not explain why *Saperstein* applies to his circumstance. Further, lower federal court decisions are not binding on this Court. See *People v Anderson*, 341 Mich App 272, 281; 989 NW2d 832 (2022) ("Lower federal court decisions may be persuasive, but they are not binding on state courts."). Defendant also argues he was not nervous because he challenged the officers at the scene. However, defendant did not challenge the officers until after he was removed from the car. The agent observed defendant's nervous behavior while defendant was still in the car. Defendant also ignores the officers' observation of another passenger attempting to pick something up from the vehicle's floor.

The officers observed defendant behaving nervously, a passenger making "furtive gestures" to the floor of the car, and the canine twice alerting to the presence of drugs. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Champion*, 452 Mich at 115. The record provides evidence the officers, considering the totality of the circumstances, had a reasonable belief drugs were in the car or on defendant. Consequently, the arrest and search of defendant was constitutional. See *Hellstrom*, 264 Mich App at 192 ("Probable cause exists where there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place.").

Because the officers had enough evidence to establish probable cause, the arrest and subsequent search of defendant was lawful. *Champion*, 452 Mich at 98. As such, the trial court did not err when it denied defendant's motion to suppress.[1] *Snider*, 239 Mich App at 407.

## III. DISPROPORTIONATE SENTENCE

Defendant argues his sentence was disproportionate. We disagree.

## A. STANDARD OF REVIEW

"This Court reviews the proportionality of a trial court's sentence for an abuse of discretion." *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017). "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality, which requires that the sentence be proportional to the seriousness of the circumstances surrounding the offense and offender." *People v Lowery*, 258 Mich App 167, 172; 673 NW2d 107 (2003).

## B. ANALYSIS

Defendant argues the trial court's sentence was unreasonably harsh. "[A]ppellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023) (BOLDEN, J.).[2] "A sentence that adheres to the guidelines' recommended range is reviewed for proportionality." *Id*. at 352. "When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Id*. at 360. " 'In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate.' " *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021), quoting *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). "The principles that guide proportional sentencing in our state are: '(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses.' " *People v Bennett*, 335 Mich App 409, 418; 966 NW2d 768 (2021), quoting *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

Defendant argues his sentence was disproportionate because another passenger, who was also convicted after the stop, was sentenced to a minimum sentence of 36 months despite having more methamphetamine and being a habitual offender. However, defendant's argument ignores the different circumstances between the two cases. The passenger accepted a plea offer from the prosecution and pleaded guilty to a lesser offense. Also, the passenger did not fight with the police at the stop. Further, had the passenger gone to trial and been found guilty on the passenger's

---

[1] To the extent that defendant is challenging his two counts of resisting arrest on the ground that his resistance was lawful because the search was unlawful, we reject that contention. As discussed, probable cause supported the arrest and search of defendant.

[2] While *Posey* was a plurality opinion that was not technically binding, we subsequently held "it [is] prudent to follow the holding in the interest of judicial economy." *People v Purdle (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 4.

original charge, like defendant, the passenger's minimum sentence would have been longer. Defendant also had a larger total prior record variable (PRV) score than the passenger. While the passenger was involved in the same stop as defendant, the circumstances surrounding their cases are different. As such, the passenger receiving a different sentence for a different conviction under different circumstances is not an unusual circumstance warranting resentencing. See *Burkett*, 337 Mich App at 637.

Defendant also argues that, with a minimum sentence of 36 months, he would be able to participate in a drug treatment program. While defendant's desire to get sober is admirable, it is not an unusual circumstance warranting resentencing in this instance. Defendant maintained he had tried treatment before and relapsed every time. Defendant's sentence precludes him from entering the treatment program he wanted, but defendant does not explain why that treatment program is the only option. The trial court, as well as the probation department, acknowledged defendant would have an opportunity to get treatment regardless of his sentence. While rehabilitation is one of the *Snow* factors, defendant was also a habitual party to drug raids. The trial court understood defendant sought treatment, but it also acknowledged defendant's role in disseminating methamphetamine in the community. Defendant has not explained why he can only seek treatment with one treatment program, or how his sobriety outweighs the other *Snow* factors. Moreover, the trial court sentenced defendant to the lower end of the minimum sentencing guidelines range.

Finally, Defendant argues that the sentencing guidelines do not consider mitigating circumstances and says, for example, the sentencing guidelines did not consider his upbringing where he was raised by his grandparents because his own parents were unable to raise him. However, the trial court did consider defendant's upbringing when it reviewed the PSIR and sentencing memorandum. The PSIR included defendant's upbringing and personal information, and defendant's sentencing memorandum included additional context regarding defendant's upbringing and experience with drugs. The trial court was clearly aware of those factors at sentencing.

The trial court referenced the PSIR, which included defendant's upbringing, addressed the issue of the passenger's different sentence, and acknowledged defendant's desire to get sober, but balanced that desire with the remaining *Snow* factors, and sentenced defendant to the lower end of the minimum sentencing guidelines range. Defendant did not demonstrate an unusual circumstance that would render the proportionate sentence disproportionate. See *Burkett*, 337 Mich App at 637. Consequently, the trial court did not abuse its discretion when it sentenced defendant to a minimum sentence of 51 months' imprisonment. See *Lowery*, 258 Mich App at 172.

## IV.  CONCLUSION

For the reasons stated above, we affirm defendant's convictions and sentence.

/s/ Kathleen A. Feeney
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace